### State of Vermont v. Lloyd W. Severance

[138 A2d 425]

November Term, 1957.

Opinion Filed January 7, 1958.

*Paul A. Bourdon* for the respondent.

*John W. Brockway*, State's Attorney, for the State.

**Shangraw, Supr. J.** This is a prosecution for the violation of V. S. 47, §10,291. Trial by jury, Hartford Municipal Court. Verdict of Guilty and judgment thereon. Sentence deferred.

The statute in question reads as follows:

"10,291. Accident; duties of operator. The operator of a motor vehicle who has caused or is involved in an accident resulting in injury to any person or property, other than the vehicle then under his control or its occupants, shall immediately stop and render such assistance as may be reasonably necessary. He shall give his name, residence, license number and the name of the owner of such motor vehicle to the party whose person or property is injured."

The case comes here upon respondent's exceptions to the failure of the Court, first, to grant respondent's motion made at the close of all the evidence for a directed verdict of not guilty and, secondly, to charge as requested.

The complaint, in so far as is material, reads:

"did then and there operate a motor vehicle on the public highway, to wit, the public highway leading from Bridgewater Corners to Bridgewater Center, in the Village of Bridgewater Center, and said motor vehicle being involved in an accident resulting in injury to property belonging to another, the said Lloyd W. Severance did fail to immediately stop and render such assistance as might have been reasonably necessary and did fail to give his name, residence and license number to the person whose property had been damaged."

The facts, as disclosed by the transcript, are found to be as follows: On May 5, 1956, Mrs. Evelyn Hubbard operated a store and gasoline station in Bridgewater Center, Vermont, and on said premises there was erected a sign owned by the Richfield Oil Company, supported by an iron post approximately three inches in diameter. About one o'clock in the morning of May 5, 1956, and while Mrs. Hubbard was occupy-

ing a bedroom located, as she testified, in the "lower end of the house upstairs", she heard a crash and immediately turned on the bedroom light which was visible from the area in which the iron post was located. She dressed in a matter of minutes, came downstairs, and was there joined by Harry Barker, an employee of Mrs. Hubbard. Mr. Barker occupied a room upstairs and located in the northerly end of the house. At the time of the crash the light was on in Mr. Barker's room, although not visible from the immediate area where the iron post in question was located. Mr. Barker also heard a crash and immediately came downstairs. Likewise, Mr. Donald F. DeLuca, a nearby neighbor, heard the noise, looked out of a window and saw a car go by, headed towards Bridgewater Corners. When Mr. DeLuca arrived at the Hubbard store Mrs. Hubbard was standing on the porch and Mr. Barker was near the sign post. None of these parties saw the respondent, Lloyd W. Severance.

At about 4:00 A.M. on the day of the accident, Harry McDonald, a Vermont State Police Officer, interviewed the respondent, and upon direct examination Mr. McDonald testified in part as follows:

> "Q. Did you discuss this accident with Mr. Severance at this time at four or five A.M.?
>
> A. I did.
>
> Q. Did you specifically investigate the matter as to whether or not he had stopped to render any assistance that might be reasonably necessary and whether or not he had notified the people that owned the property?
>
> A. I did.
>
> Q. What did your investigation reveal?
>
> A. Mr. Severance admitted he had not stopped. His statement to me was that he knew Mrs. Hubbard and didn't want to get them out of bed at that hour.
>
> Q. And did you tell him that he was to notify her?
>
> A. I did.

Q. And did you inquire as to whether or not he left his residence and license number?

A. I did.

Q. Had he?

A. No.

Q. And did you tell him he must do that?

A. I did."

Thomas F. Purcel of West Lebanon, New Hampshire, distributor for the Richfield Oil Company, was notified of the accident by Mrs. Edna Severance, mother of the respondent, about 8:30 o'clock in the morning of May 5, 1956. Mrs. Severance, in so reporting, was acting on behalf of her son, the respondent. The respondent, between four and five o'clock in the afternoon of May 5, 1956, called Mr. Barker by telephone, reporting the accident.

It was conceded that respondent had an accident on the day, as alleged, and that he struck and damaged the sign post in question. With the foregoing concession in mind, there remained only the following questions for consideration by the trial court and jury. Did the respondent fail to immediately stop and render such assistance as might have been reasonably necessary; and did he fail to give his name, residence and license number to the person whose property had been damaged?

■■ Before proceeding directly to the assigned errors, it may be well for us to consider the purpose of the statute as intended by the legislature. In many jurisdictions there are similar statutes imposing duties upon a motorist who has been involved in an accident. Such statutes impose no duties other than those which good conscience will direct a driver to observe. They are directed primarily against a callous class known as "hit and run" drivers. These statutes are designed to prohibit drivers of motor cars from seeking to evade civil or criminal liability by escaping, before their identity can be established, and from leaving persons injured in collisions, in distress or danger, for want of proper medical or surgical treatment. 5A Am Jur §1186, pages 987 to 989. The duty imposed

on the driver of the vehicle by the statute is not passive but requires positive, affirmative action, that is to say, to stop and to give aid and information * * * * * . *Herchenback* v. *Commonwealth*, 185 Va 217, 38 SE2d 328. Such duty varies to some extent in the several jurisdictions where such or similar statutes are in force, depending upon the phraseology of the statutes, and where several distinct acts are required the omission of any one or more of them constitutes a violation. 61 CJS §674, page 817; *People* v. *Scofield*, 203 Cal 703, 265 P 914, followed in *People* v. *Campridon*, 204 Cal 701, 268 P 372; *People* v. *Kaufman*, 49 Cal App 570, 193 P 953.

■ Section 10,291 is aimed at "hit and run" drivers, and it is the plain meaning of the statute that the respondent's first duty after the accident was to stop, and from then on it followed that he had additional duties and each were separate and independent obligations under the statute. The omission of any one or more constituted a violation of the statute. 61 CJS, *supra*; *People* v. *Scofield*, *supra*; *People* v. *Campridon*, *supra*; *People* v. *Kaufman*, *supra*.

■ The uncontroverted evidence discloses that the post in question was bent or broken and that at the time the respondent was unable to render any assistance. Although this appears to be a fact, it can not be said that he was not required to stop even though it should subsequently develop that no assistance could be rendered. This is not the spirit of the statute nor is it sound reasoning. A definite cessation of movement for a sufficient length of time to permit a person of ordinary powers of observation fully to understand the surrounding circumstances and to obtain a knowledge of the results of an accident is essential. While it is urged by the respondent that to stop and to have offered assistance would have been a useless gesture, in view of the circumstances, this we do not conceive to be the true test. His first duty was to stop. Whether or not assistance is reasonably necessary in any given case depends upon all the surrounding circumstances. 61 CJS §674, page 821. There appears no yardstick by which this duty can be uniformly measured. In the case of *Garcia* v. *State*, 131 Texas Cr R 84, 96 SW2d 977, it was held that the

accused could not escape conviction on the ground that the state showed that the person was instantly killed and that it would have been useless for accused to have stopped.

■ The construction of a statute leading to an absurd consequence must be avoided, if possible. *State* v. *Reynolds*, 109 Vt 308, 310, 1 A2d 730; *State* v. *Goyet*, 119 Vt 167, 172, 122 A2d 862. It is equally true that in the interpretation of statutes the fundamental rule is to ascertain and give effect to the intention of the legislature, (*In re Woolley's Estate*, 96 Vt 60, 64, 117 A 370); and if it can fairly be done, a statute must be so construed as to accomplish the purpose for which it was intended, *State* v. *Baldwin*, 109 Vt 143, 144, 148, 194 A 372; *Davidson* v. *Davidson*, 111 Vt 24, 27, 9 A2d 114; *In re Cornell*, 111 Vt 454, 455, 459, 118 A2d 151; *State* v. *Tacey*, 102 Vt 439, 441, 150 A 68, 68 ALR 1353; and should not be construed so strictly as to defeat its purpose. *Brammall* v. *Larose*, 105 Vt 345, 349, 350, 165 A 916; *Parker* v. *Anderson*, 112 Vt 371, 377, 25 A2d 41.

■ In construing a motor vehicle law, the courts should give force and effect to every part of it, to carry out the intent of the lawmakers, if possible, such intent to be ascertained from the language in its plain and natural meaning. * * * * A common sense interpretation, therefore, must be given to such statute, giving some effect to each part of it. *State* v. *Masters* (1928), 106 W Va 46, 144 SE 718; see 66 ALR, page 1231. In the case of *People* v. *Fimbres* reported in 107 Cal App 778, it was stated that where an animal was struck or where inanimate property is damaged, a stop by the driver of the car may serve a useful purpose. It may perhaps minimize the damage, or enable the owner of the property, or other persons who may act in his interest, to learn the identity of the person. See annotation, 101 ALR 915.

On-the-spot identification, so far as possible, is intended by the statute. About seven hours elapsed before a report was made of the accident to a representative of the Richfield Oil Company, and it was well within the province of the jury to determine whether or not the duty to give his name, residence, etc., as soon as reasonably possible was so done.

 The Court, as a part of its charge, read the allegations contained in the complaint and also quoted verbatim Section 10,291, submitting the following issues to the jury: (1) whether the respondent failed to immediately stop and render assistance and (2) whether the respondent did give his name, residence, license number, and the name of the owner of the motor vehicle to the party whose property was injured. It is noted that the phrase contained in the statute, "as may be reasonably necessary", was omitted, to which omission exception was taken at the conclusion of the charge. Tr. page 50. This exception was not briefed; hence, not here considered. *In re Everett's Will*, 105 Vt 291, 314, 166 A 827; *Northern Trust Company* v. *Perry*, 104 Vt 44, 46, 156 A 906. In any event, considering the charge in its entirety, we are not convinced that the jury were misled by this omission. A charge is not to be considered piecemeal but as a whole. *Taylor* v. *Mayhew*, 109 Vt 251, 255, 195 A 249.

 It is to be noted that respondent's motion for a directed verdict contains the following phraseology: "They have failed to establish a prima-facia case, to wit, that they failed to show by the evidence, beyond a reasonable doubt that this respondent was able to render any assistance of any sort or character to this injured property, and that they have failed to show that he did not seasonably give notice to the owner of the property which was injured." It is interesting to note the absence of reference to respondent's failure to stop. This exception challenges the substance of the proof presented against the respondent and we are required to test the evidence in its aspect most favorable to the State, *State* v. *Tatko*, 119 Vt 459, 460, 128 A2d 663; *State* v. *Hart*, 119 Vt 54, 55, 117 A2d 387; *State* v. *Boudreau*, 111 Vt 351, 360, 16 A2d 262; and free from the force of modifying evidence, *State* v. *Perras*, 117 Vt 163, 164, 165, 86 A2d 544; *State* v. *Woolley*, 109 Vt 53, 63, 192 A 1. The test laid down in passing upon respondent's motion for a directed verdict is whether the State introduced evidence fairly and reasonably tending to show respondent's guilt beyond a reasonable doubt. *State* v. *Boudreau, supra*; *State* v. *Hart, supra*. We are satisfied that the State has successfully carried this burden.

Upon completion of the court's charge, counsel for respondent verbally requested an additional charge. Municipal Court Rule XXII, adopted to take effect on February 1, 1944, provides:

> "All requests to charge shall be typewritten and as concise as possible, without needless repetition; they shall be presented to the court and a copy thereof furnished the other party before the opening argument for the defendant; and no request will be considered and no exception allowed for failure to comply with any request not presented within the rule."

County Court Rule 30 provides that typewritten requests to charge must be presented to the court prior to the opening argument, and it has been held by this Court that refusing a charge not requested until conclusion of charge is not error, *Northern Trust Company* v. *Perry*, 104 Vt 44, 45, 49, 156 A 906; and an oral request for instructions presented at conclusion of trial court's charge came too late, and there was no error in refusal to comply with it. *French* v. *Nelson*, 111 Vt 386, 389, 17 A2d 323; *Bowler* v. *Miorando*, 112 Vt 363, 364, 24 A2d 351; *Mercer* v. *Holmes*, 119 Vt 368, 376, 125 A2d 790.

We likewise hold that respondent's request to charge was properly refused by the court.

Viewing the evidence in the light most favorable to the State, the jury could have reasonably found either that respondent failed to immediately stop; or failed to give his name, license number, etc., as soon as reasonably possible after the accident, or both.

*Judgment affirmed. Cause remanded for sentence.*