## State of Vermont v. David Arbeitman

[313 A.2d 17]

No. 115-72

Present: Barney, Smith, Keyser, Daley, JJ., and Hill, C. Supr. J.

Opinion Filed December 4, 1973

598

*Robert W. Gagnon,* State's Attorney, and *Jean B. Baldwin,* Deputy State's Attorney, for the State.

*James C. Gallagher, Esq.,* of *Downs, Rachlin & Martin,* St. Johnsbury, for Defendant.

Daley, J. This is an appeal from a conviction, following a jury trial in the District Court of Vermont, Unit No. 5, Washington Circuit, for obstructing pedestrian traffic with intent to cause public inconvenience or annoyance. Such intentional obstruction is one form of disorderly conduct prohibited by 13 V.S.A. § 1026. The relevant portions of this section provide:

> A person who, with intent to cause public inconvenience, or annoyance . . .:
>
> (5) Obstructs . . . pedestrian traffic, shall be imprisoned for not more than 60 days or fined not more than $500.00 or both.

We affirm the judgment of the lower court.

On May 11, 1972, about 35 people gathered in front of the Federal Building in Montpelier to protest the United States' involvement in the Vietnam War. After allowing them to sit in front of the Post Office doors for approximately three hours, the State's Attorney for Washington County informed them of the law prohibiting obstruction of pedestrian traffic and warned that nondispersal after a ten-minute period would result in arrest.

Appellant was present and heard the State's Attorney's warning. Although most of the demonstrators did disperse

within the ten-minute grace period, appellant then selected for himself from out of the now more open area a seat directly in front of the outer door. He faced the street and placed his back squarely against the door.

Normally a person entering the Federal Building does so by pulling this door outward, toward himself. During the approximately five-minute span prior to appellant's arrest, two or three people attempted and gained entrance by pulling with sufficient force to slide him far enough out of the way to be able to squeeze in sideways. These people were adult males, and they were aided by a guard inside the building who was pushing outward on the door.

The appellant claims that three events occurring during the trial, taken cumulatively, result in prejudicial error, requiring reversal of his conviction. The first was a comment made by the State's Attorney during cross-examination by the appellant's counsel. This comment related to a warning that the State's Attorney made that a severe sentence would be recommended if the appellant insisted on his right to a jury trial.

■ ■ It is readily apparent from the record that this comment was made in open court only as an anticipated response to a specific question of the appellant's counsel. The appellant cannot now ask us to entertain a claim of prejudicial taint in his trial that was brought about in his own behalf. Moreover, the State's Attorney withdrew from the prosecution of the appellant when aware that he would be a witness in this case, and the prosecuting attorney in this case made no sentence recommendation following the conviction of the appellant. At any rate, sentencing is solely the function of the trial judge. See 13 V.S.A. § 7031.

■ The appellant, as his second and third events, presents us with the number of challenges for cause during *voir dire,* which taken together with the fact that the jury returned its verdict after deliberating for ten minutes, establishes the prejudice of the jury against him. The law of this jurisdiction allows for an unlimited number of challenges for cause.

■ During the course of the *voir dire* examination, certain prospective jurors indicated hostility toward anti-war demonstrations. All of these jurors were subject to challenge for cause and were excused. In addition to the appellant's unrestricted challenges for cause, all of which were consequentially granted, he exercised the six peremptory challenges permitted under our law. He has not demonstrated that his right to remove biased and prejudiced prospective jurors was in any way impaired or that the jury that determined his guilt was other than fair and impartial.

■ ■ Furthermore, the law does not prescribe a mandatory minimum length of time that a jury must deliberate before returning a verdict. *State* v. *Morrill,* 127 Vt. 506, 509, 253 A.2d 142 (1969); *State* v. *Lumbra,* 122 Vt. 467, 469, 177 A.2d 356 (1962). Strong evidence of guilt, a lack of complex legal issues, and a proper charge by the court are factors that would naturally speed a jury's return with its verdict. The record shows that all three factors are present in this case.

Therefore, taken either separately or cumulatively, the three events of which the appellant complains do not display prejudicial error. The appellant takes nothing by these claims of error.

The appellant's next attacks on his conviction are based upon the statute itself, 13 V.S.A. § 1026(5). He claims first that he did not "obstruct" pedestrian traffic as prohibited by the statute. To examine the appellant's claim of error, we turn to the charge of the trial court to the jury:

> To assist you, hoping I can assist you in some way, I think I should define the word "obstacle" as well as the word "intent". They are very crucial to the offense with which this young man is charged. Webster's Seventh New Collegiate Dictionary defines "obstruct" as follows: "To block or close up by an obstacle; to hinder from passage, action or operation; to impede." Black's Law Dictionary, Third Edition, defines "obstruct" as "To block up; to interpose obstacles; to fill with barriers or impediments; to impede or hinder."

■ The appellant's challenge on the definition of the word "obstruct" cannot stand. It must be presumed that the Legislature, in using the word "obstruct", intended the ordinary meaning of the word to be the action prohibited. See *Medlar* v. *Aetna Insurance Company,* 127 Vt. 337, 342, 248 A.2d 740 (1968). The jury was instructed as to the plain, ordinary meaning of the word "obstruct" and so found that he was guilty as charged. No error is shown in this respect to the court's charge.

The appellant also contends that his conviction under 13 V.S.A. § 1026(5) cannot stand because of the manner in which the jury was instructed on the issue of intent; hence, the statute generally and as applied to him is unconstitutionally vague and overbroad.

■ ■ In order for the jury to return a verdict of guilt, it must have found not only that appellant obstructed pedestrian traffic, but that he did so "with intent to cause public inconvenience, or annoyance." 13 V.S.A. § 1026. Since the jury heard testimony that appellant had listened to the State's Attorney's warning and had thereafter placed his back against the door, it had sufficient grounds for finding the requisite intent. Intent, a state of mind, is rarely proved by direct evidence but is usually inferred from a person's acts and proved by circumstantial evidence. See *Tompkins* v. *Commonwealth,* 212 Va. 460, 184 S.E.2d 767, 768 (1971); *Johnson* v. *Commonwealth,* 209 Va. 291, 163 S.E.2d 570, 574 (1968).

■ This same testimony also shows that appellant cannot claim that he has been "held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States* v. *Harriss,* 347 U.S. 612, 617 (1954). See also *Grayned* v. *City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222, 227 (1972). Thus, if the jury was properly charged, appellant's arguments that the statute is unconstitutionally vague or overbroad, as applied to him, must fail.

Appellant argues that in instructing the jury that it could consider the presumption that one is presumed to intend the natural and probable consequences of his voluntary acts, the court has created the danger of the statute's utilization to

obtain convictions for conduct which the State has no business regulating. Focusing on this portion of the charge, appellant raises, among other examples, the specter of a mother pushing a baby carriage on a busy sidewalk being imprisoned for violating § 1026 (5).

Appellant has failed to consider the lower court's charge in its entirety, something this Court must do. *State v. Stewart*, 129 Vt. 175, 182, 274 A.2d 500 (1971). "Instructions to the jury may not be isolated into small segments and considered piecemeal but must be measured by their full context." *State v. Morrill, supra,* 127 Vt. at 511.

"The total instructions correctly stated the true rule of law concerning the offense on trial and the crucial issues." *State v. Reed,* 127 Vt. 532, 540, 253 A.2d 227 (1969). The jury was told that it could find the appellant guilty only after finding that he had both actually intended to cause public inconvenience or annoyance and had obstructed pedestrian traffic. This charge, viewed in its entirety, was adequate, and a conviction under § 1026(5) was not erroneous thereunder.

In light of the purpose and effect of this section, it is not unconstitutionally vague nor overbroad on its face. As we construe this statute, one cannot be convicted of obstructing traffic with the intent to annoy the public if his intent is to annoy by obstructing by spewing words or ideas at them which they may find offensive, abusive, or distasteful. The obstruction must be a physical obstruction, a result of the body or objects and not of minds or words.

Section 1026(5) is not aimed at suppressing expression. It specifies conduct prohibited generally; it is not aimed at demonstrators only. "Persons are free under this statute to express any ideas or convey any message they wish. They are prohibited only from performing the particular acts proscribed by the statute." *Cf. State v. Royal,* — N.H. —, 305 A.2d 676 (1973).

An incidental restriction on symbolic expression will not invalidate an otherwise valid statute. "Our cases make equally clear, . . . that reasonable 'time, place and manner' regulations may be necessary to further significant

governmental interests, and are permitted." *Grayned* v. *City of Rockford, supra,* 408 U.S. at 231–32. Preventing obstruction of streets and sidewalks is a significant governmental interest. *Coates* v. *Cincinnati,* 402 U.S. 611, 614 (1971); *State* v. *Albers,* 113 N.H. 132, 303 A.2d 197, 201 (1973).

*State* v. *Albers,* supra, concerned an arrest made at a demonstration against the Vietnam War near the entrance to Pease Air Force Base. The defendant was charged with failing to withdraw from a mob action after being commanded to do so by a police officer under N.H.R.S.A. 609-A: 4 (Supp. 1972). The issue was whether N.H.R.S.A. 609-A: 1 II, which defined "Mob Action" as "the assembly of two or more persons to do an unlawful act," was void on its face for vagueness and overbreadth. The alleged unlawful act was that of standing in a public highway blocking traffic.

Chief Justice Kenison, after construing "to do" as requiring an intention to commit the unlawful act, thus proscribing prosecutions solely for the initial act of assembling, held the statute to be valid. Addressing himself to the specific alleged unlawful act, he stated:

> It is particularly pertinent to this case that well within the domain of legitimate legislation are laws which insure the preservation of the streets for their primary, intended use for travel, even though one mode of "expression"—the obstruction of traffic by a group of demonstrators—may be prevented as a result. *Id.* 303 A.2d at 201.

Finally, the appellant argues that the lower court was required to instruct the jury in the words of a construction placed on a Kentucky statute and mentioned with approval by the Supreme Court of the United States in *Colten* v. *Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). An examination of *Colten* reveals that the conduct proscribed by the Kentucky statute differs from that proscribed by our statute. As *Grayned* v. *City of Rockford, supra,* and the two 1973 New Hampshire cases, all decided since *Colten,* illustrate, there are various ways of construing statutes to avoid infringement of First Amendment freedoms. The end result is that the principles enunciated by the United

States Supreme Court must be complied with, but one state's construction which saves its statute need not become every other state's patterned jury instruction, and this is especially so where the states' statutes proscribe dissimilar conduct. The construction placed on the Kentucky statute in *Colten* is not necessary to save our more narrowly drawn statute.

The appellant has not here shown prejudice in these proceedings, nor has he here shown that 13 V.S.A. § 1026(5) is invalid either on its face or as here applied.

*Judgment affirmed.*