## State of Vermont v. Charles Cushman

[329 A.2d 648]

No. 112-73

Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed December 12, 1974

*Dale O. Gray*, State's Attorney, for the State.

*Swainbank, Gensburg & Morrissette,* St. Johnsbury, for Defendant.

**Smith, J.** The defendant was charged by information and warrant with the offense of recklessly engaging in conduct which placed another person in danger of death or serious bodily injury. 13 V.S.A. § 1025. On June 1, 1973, the defendant was tried in the District Court of Vermont, Unit No. 4, Caledonia Circuit, by a jury and was found guilty. Defendant's appeal from this conviction has been timely taken to this Court.

The appeal of the defendant is mainly premised on what he claims to be a wrongful interpretation by the trial court of the statute under which he was charged. This challenged interpretation was the source of allegedly erroneous jury instructions. Because of the points raised by the defendant, we believe it essential to quote the statute in its entirety for a proper understanding of the questions presented, as well as the resolution thereof.

§ 1025. Recklessly endangering another person

A person who recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury shall be imprisoned for not more than one year or fined not more than $1,000.00 or both. Recklessness and danger shall be presumed when a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded.

Taken in the light most favorable to the State, the prevailing party below, the factual situation is not complicated. Trooper McDonald came to the home of the defendant in the evening of January 1, 1973. The visit was in response to a call made to the State Police by a Mrs. Aldrich, who lived with the defendant at his home on Bible Hill. Mrs. Aldrich was disturbed, because of her young daughter, by the presence of an individual brought to the house by the defendant, and for whom defendant had furnished bail. An argument ensued between the defendant and the trooper, the details of which are not relevant to this decision. The evidence of the State was that the defendant, during this argument, took a firearm from a rack in the kitchen and pointed it in the direction of the police officer. It was the contention of the

defendant, who took the stand in his own behalf, that the weapon was of antique vintage and not loaded.

The first point briefed by the defendant is that the trial court committed error by instructing the jury that it need not find that the weapon used by the defendant was loaded in order to convict him. What defendant argues, as we understand it, is that he has not been charged with assault, but with placing another in danger of death or bodily injury. The claim of the defendant is that in order to convict him under 13 V.S.A. § 1025 it is essential that actual power to commit bodily injury must rest in the actor's hand, and the apparent power which is adequate for the finding of an assault is inadequate under the above statute.

We agree with the defendant that 13 V.S.A. § 1025 does not charge a simple assault, the definitions of which are set forth in 13 V.S.A. § 1023. The Legislature, in its general revision of the laws relative to breach of the peace in the 1971 Adjourned Session of the General Assembly, set forth a separate offense directly concerned with the use of firearms under § 1025. There is a clearly expressed legislative intent in the second sentence of this provision that even if the actor has knowledge, or is presumed to have knowledge, that the gun he is pointing in the direction of another is unloaded, the recklessness of his conduct is presumed from such action, as is the fact that he is placing the other person in danger of death or bodily injury.

We are aware of the principle cited by the defendant that, in interpreting a penal statute, the interpretation most favorable to the accused must be the one adopted. *State* v. *Baldwin,* 109 Vt. 143, 148, 194 A. 372 (1937). But the fundamental rule is to ascertain and give effect to the intention of the Legislature, *State* v. *Severance,* 120 Vt. 268, 274, 138 A.2d 425 (1957); *State* v. *Baldwin, supra,* and "construction of a statute leading to an absurd consequence must be avoided if possible." *State* v. *Severance, supra.*

It can hardly be doubted that a person threatened by another with a firearm has no way of ascertaining whether or not such weapon is loaded, but the state of mind of the victim is irrelevant under this statute. The danger of death or of bodily injury is equally acute, no matter what knowledge the

actor may possess on the loaded or unloaded condition of the firearm which he points in the direction of the victim. To accept the defendant's contention that the Legislature, in enacting this statute, only intended to prevent the pointing of a loaded weapon at another but not to proscribe the pointing of an unloaded weapon would require us to construe the statute to lead to an absurd result. The most dangerous weapon is the "unloaded gun", and the Legislature's intent was to proscribe the pointing of all firearms at others.

The second point briefed by the defendant is that the court erred by instructing the jury that it need only find that the weapon was aimed in the general direction of the trooper. The Information and Warrant charged that the defendant "pointed a firearm, to wit, a shotgun, at him, contrary to the form of the statute." The form of the statute, as we have seen, is "points a firearm at or in the direction of another." The court made clear in its instructions that if the gun held by the defendant was pointed into the air, or not in the direction of the victim, the presumption would not apply. We do not find that the use of the phrase "general direction" is such a material variance between allegation and proof as to mislead the defendant or the jury, and error of the nature found in *State* v. *Coomer*, 105 Vt. 175, 178, 163 A. 585 (1933), is not present here.

The defendant next briefs a contention that the denial of his request to charge that "To find the Respondent Guilty, you must find beyond a reasonable doubt: (c) That J. Bruce McDonald was actually placed in danger" was error. He argues that the court's charge on this issue was that, "The testimony is not whether, in fact, the weapon was loaded, but whether it reasonably appeared to the person that he was placed in such danger." Taken out of context, as this quotation is, it would appear to be an instruction more favorable to the defendant than he would be entitled to under 13 V.S.A. § 1025. It would require proof on the part of the State that a person toward whom an actor pointed a firearm could reasonably believe that he was in danger of death or bodily injury from the firearm.

However, reading the charge as a whole, as we must, *State* v. *Arbeitman*, 131 Vt. 596, 602, 313 A.2d 17 (1973),

we find that the court correctly charged the jury. The charge was directly based on the words of the statute, and the jury was instructed several times during the charge that the crucial issue was whether or not the defendant pointed a firearm at the officer. As we have already pointed out, under the second sentence of 13 V.S.A. § 1025 the danger to the victim is presumed once the jury decides that the defendant pointed a firearm in the direction of the victim. While the loaded or unloaded condition of the firearm is irrelevant, an accused can, of course, introduce potentially exculpatory evidence for the jury's consideration that the firearm was actually a toy and incapable, under any conditions, of inflicting injury. As no such evidence was adduced below, defendant takes nothing by his exception to the charge on this issue.

Finally, the defendant contends that hearsay evidence, consisting of the trooper's testifying to what Mrs. Aldrich said when he asked her what the problem was, was erroneously admitted. In view of the fact that Mrs. Aldrich took the stand and gave her own testimony as to the problem that caused her to call the trooper, admission of this cumulative testimony of the trooper, even if it were hearsay, was harmless error.

Briefed by the State is an exception to the refusal of the lower court to charge the jury on the allegedly lesser included offense of simple assault proscribed by 13 V.S.A. § 1023(a)(3). Advanced for our consideration only in the event we reverse and remand, it need not be considered since we affirm the conviction under 13 V.S.A. § 1025.

*Judgment affirmed.*

**Daley, J.** (dissenting). While I fully concur with the view of the majority that under the statute the knowledge of the actor as to the loaded or unloaded nature of the firearm is an irrelevancy, I cannot subscribe to my associates' further conclusion that the question of whether the gun is *actually* loaded or unloaded is similarly nongermane.

In my opinion, one cannot be placed in an objective state of danger when an unloaded gun is pointed at him. He may well be "in fear", but he is not, as I see it, "in danger". In cases of this nature I would recognize the presumption of danger (loaded gun) from the act of pointing, but permit the defendant to present evidence that the gun was not, in fact,

loaded. The ultimate determination as to whether the gun was loaded, and thus whether the victim was placed in danger, would then properly rest with the jury.

Defendant in the case before us testified at trial that the gun was not loaded, and I feel that the trial court committed reversible error in instructing the jury that "the fact that a firearm is or is not loaded is of no importance." The jury was thereby prevented from considering an important factor bearing on the essential element of danger.

I would reverse.