## State of Vermont v. Harland McLaren

[376 A.2d 34]

No. 130-76

Present: Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.

Opinion Filed June 7, 1977

*John S. Liccardi,* Rutland County State's Attorney, and *Stephen Alan Dardeck,* Deputy State's Attorney, Rutland, for Plaintiff.

*James L. Morse*, Defender General, and *Charles S. Martin*, Appellate Defender, Montpelier, for Defendant.

**Daley, J.** In the early morning hours of November 24, 1974, a college co-ed, walking along a street in the Town of Poultney, was approached by four young men in an automobile. One of the men alighted from the motor vehicle, pointed a rifle in the youngs lady's direction, and ordered her to get into the automobile. When she refused, the man grabbed her and tried to drag her into the vehicle. A struggle ensued, during which the woman managed to escape. Law enforcement authorities were notified of this incident and, following an investigation into the matter, an information was brought by the Rutland County State's Attorney charging the appellant, Harold McLaren, with separate counts of attempted kidnapping, 13 V.S.A. § 9, 13 V.S.A. § 2401; reckless endangerment, 13 V.S.A. § 1025; and simple assault, 13 V.S.A. § 1023(a)(1). A trial by jury in the District Court of Vermont, Unit No. 1, Rutland Circuit, resulted in a verdict of guilty on the attempted kidnapping and reckless endangerment charges; a verdict of not guilty was returned on the simple assault charge. From the district court's denial of his motion for judgment of acquittal or new trial, the defendant appeals.

The three principal claims of error briefed by the defendant relate to the failure of the trial court to properly instruct the jury on the hold to service element of the kidnap offense with which he was charged, the court's instruction to the jury on the reckless endangerment charge which prevented it from considering the operative nature of the firearm, and the use at trial of testimony obtained by the State at an inquest held subsequent to the filing of the information against the defendant. Upon a review of the record, we are convinced that prejudicial error exists as to each count, thus requiring a reversal of the judgment and a new trial on both counts.

Because we are overruling the decision of the Court in *State* v. *Cushman*, 133 Vt. 121, 329 A.2d 648 (1974), our discussion will begin with the reckless endangerment charge, Count II of the information.

■ ■ The defendant urges this Court to reverse his conviction on the reckless endangerment charge because of the court's instructions to the jury regarding the effect of the

inoperative nature of the rifle which was used at the time of the incident. Our reckless endangerment statute, 13 V.S.A. § 1025, provides that:

> A person who recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury shall be imprisoned for not more than one year or fined not more than $1,000.00 or both. Recklessness and danger shall be presumed where a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded.

In *State* v. *Cushman, supra,* the majority opinion of a divided Court held that whether a weapon is loaded or unloaded is irrelevant under 13 V.S.A. § 1025. *Id.* at 123-24. In the present case, the trial court, in accordance with the holding in *Cushman,* instructed the jury that whether the rifle which was allegedly used by the defendant was loaded or not was of no importance. By so instructing the jury, the court removed from its consideration evidence that the rifle in question was unloaded and that it lacked a bolt, thereby rendering it inoperative as a firearm.

13 V.S.A. § 1025 proscribes conduct which places or may place a person in danger of death or serious bodily harm. We fully recognize, as did both the majority and dissenting opinions in *Cushman,* that the statutory presumption renders irrelevant the state of mind of the actor as it relates to the loaded nature of the firearm. We cannot agree, however, with the view expressed by the majority in *Cushman* that the presumption can be likewise construed to make irrelevant the actual dangerous nature of the firearm itself. We therefore overrule *Cushman* and hold that the Legislature, when it enacted 13 V.S.A. § 1025, intended to proscribe conduct which would place the victim in actual danger of death or serious bodily injury, not mere apparent danger.

Whether the firearm was unloaded or was otherwise inoperative is an essential issue in determining whether the victim was placed in an objective state of danger of death or serious bodily harm. See Annotation, "Unloaded Gun - Criminal Responsibility", 79 A.L.R.2d 1412, 1423-26 (1961); Annotation, "Unloaded Firearm as Dangerous Weapon", 74 A.L.R. 1206

(1931). The ultimate determination as to whether the weapon was loaded is properly within the province of the jury. *State* v. *Cushman, supra,* 133 Vt. at 126 (dissenting opinion). The evidence in this case presented a factual issue for the jury's determination as to whether the victim had been placed in an objective state of danger of death or serious bodily harm. The trial court's instruction to the jury regarding the loaded nature of the firearm, while it correctly stated the controlling law at the time, was nevertheless erroneous and requires that the conviction on the reckless endangerment count be reversed.

■ ■ The defendant also challenges the trial court's instructions as they related to Count I, the attempted kidnapping charge. No objections are raised regarding the court's instructions to the jury regarding the "intent" element of this crime, nor of its instructions with respect to the "attempt" element of the alleged crime.

As· was noted in *State* v. *Barr*, 126 Vt. 112, 119, 223 A.2d 462 (1966), our kidnapping statute, 13 V.S.A. § 2401, provides different ways in which the proscribed crime may be committed. Under the statute, a person who, without legal authority,

> forcibly or secretly confines or imprisons another person within this state against his will, or forcibly carries or sends such person out of the state, or forcibly seizes or confines or inveigles or kidnaps another person with intent to cause him to be secretly confined or imprisoned in this state against his will, or to cause him to be sent out of this state against his will, or in any way held to service against his will, shall be imprisoned not more than twenty-five years or fined not more than $10,000.00, or both.

The State, by amended information, charged that the defendant, did, without legal authority:

> forcibly attempt to seize [the victim], age 18, with intent to hold her to service against her will by pointing a rifle at her and threatening to shoot her unless she entered a motor vehicle, by grabbing her and ordering her into the motor vehicle while holding the barrel of the rifle against the back of her head, and by attempting to physically drag her into the motor vehicle.

The defendant contends that he was entitled to an instruction setting forth the meaning of the "held to service" element of that portion of the kidnap statute with which he was charged.

The Legislature, in enacting 13 V.S.A. § 2401, did not define the phrase "held to service". There is no case law in this jurisdiction which would supply a definition, and we note that, while several of our sister states have kidnap statutes which contain this phrase, our research has failed to disclose case law from those jurisdictions which would facilitate our inquiry. However, reference to standard dictionaries, when combined with a study of the historical development of our kidnap statute, does shed light upon the peculiar nature of the "held to service" element contained in 13 V.S.A. § 2401.

The primary definitions of "service" in *Webster's New Collegiate Dictionary* (1972 ed.) are: "the occupation or function of serving; employment as a servant; contribution to the welfare of others". Reference to a dictionary printed at the turn of the century, a period of time especially pertinent in view of the historical roots of our kidnap statute, reveals that "service" was defined as: "I. The condition of being a servant; the fact of serving a master; II. The work or duty of a servant; the condition of serving a master." *The Oxford Dictionary* (1914). From these sources, it is apparent that to hold a person to service connotes a substitution of the will of the victim for that of the actor, that the victim is in the condition of acting either on behalf of or for the benefit of the actor.

This interpretation of the "held to service" phrase is buttressed by an analysis of the historical development of the kidnap statute in Vermont. Act No. 4, passed on November 8, 1804 (codified at p. 351 of the 1808 General Statutes of Vermont and at p. 264 of the 1824 General Statutes of Vermont), established that kidnapping included, among other acts, the carrying, removing or transporting of residents of this State into any other state for the purpose of placing them in the condition of servitude. This "servitude" element of the kidnap statute remained after it was amended to punish those individuals who, "without legal authority, . . . shall forcibly seize, inveigle or kidnap any person with intent . . . to cause such person . . . *to be sold, or in any way held to service against his will*", General Statutes of Vermont, Title 28, section 27 (1850) (emphasis added). This identity between involuntary servitude and being held to service is further reflected in language

employed by the General Assembly in enacting the "Provisions Relative to Persons Claimed as Fugitive Slaves, and to Prevent Kidnapping", General Statutes of Vermont, Title 32, Chapter 109 (1863), wherein several references are made to individuals who are "slaves, *or owe service* or labor to any person". (emphasis added). When the 1850 kidnap statute was amended in such a manner as to eliminate the phrase "to be sold" while retaining the "held to service" language, the Legislature intended to preserve the element of servitude in that portion of the kidnap statute.

The only reported Vermont case in which a defendant was charged and convicted of kidnapping with intent to hold his victim to service, *State* v. *Barr, supra,* illustrates the criminal conduct which is proscribed by this portion of 13 V.S.A. § 2401. In *Barr,* the evidence demonstrated that the victim was forced by the defendant to make numerous telephone calls on his behalf, and to knock upon a door in order to allow the defendant to gain entry into a store. While not explicitly stated by the Court in *Barr,* it is apparent from these facts that the victim was made to act for the benefit of the defendant while she was confined by him.

In our view, the phrase "held to service" as employed in 13 V.S.A. § 2401 imports more than forcibly or secretly confining, imprisoning, or otherwise restricting the victim's liberty. Such acts or conduct by the defendant are proscribed by another portion of the kidnap statute. The hold to service element, drawing from its nineteenth century genesis and its attendant correlation with involuntary servitude, requires that the victim be forced, compelled or coerced to engage in an act, or to forego engaging in an act, which act or forebearance inures to the benefit of the perpetrator of the crime. The State chose to prosecute the defendant for violation of that portion of the kidnap statute containing the intent to hold to service element; this element was an essential and material aspect of the crime charged. It was the duty of the trial court to instruct the jury on all material issues raised by the evidence and the pertinent law. *State* v. *Audette,* 128 Vt. 374, 378, 264 A.2d 786 (1970). The charge to the jury must be full, fair and correct on all issues, theories and claims within the pleadings. *State* v. *Rebideau,* 132 Vt. 445, 454, 321 A.2d 58 (1974). We therefore hold that the court, by not instructing the jury on this element of the kidnap

statute, failed to meet this duty and allowed the jury to engage in assumptions or speculations as to the actual nature of the offense charge. This constitutes error and warrants the reversal of the defendant's conviction upon Count I.

The defendant's claim of error relating to the use at trial of inquest testimony of State's witnesses has been passed upon by this court in *State* v. *Lapham*, 135 Vt. 393, 377 A.2d 249 (1977) and requires no comment in this decision.

*Judgment reversed and cause remanded for a new trial.*

**Barney, C.J.** (concurring). I agree with the disposition of this case made by the majority of the Court in all aspects except for its treatment of the exception to the charge under the "reckless endangerment" statute, 13 V.S.A. § 1025. The issue argued to this Court was whether or not it was error for the trial court to fail to charge the jury that it could consider the inoperative nature of the gun because of the missing activating bolt. Under *State* v. *Cushman*, 133 Vt. 121, 125, 329 A.2d 648 (1974), "an accused can, of course, introduce potentially exculpatory evidence for the jury's consideration that the firearm was actually a toy and incapable, under any conditions, of inflicting injury". It seems clear to me that the Legislature intended that the question of whether or not the weapon was loaded was not to be a defense, as *State* v. *Cushman, supra,* says. Since the charge was defective on the question of the inoperability of the gun, I would ground the reversal on that point. I would leave *State* v. *Cushman, supra,* standing, since I believe it correctly and properly evaluates the legislative intent by which we are bound. *State* v. *Matthews*, 131 Vt. 521, 523, 310 A.2d 17 (1973).