## State of Vermont v. Richard Cantrell

[558 A.2d 639]

No. 84-052

Present: Allen, C.J., Peck, J., and Barney, C.J. (Ret.), Martin, Supr. J. and Costello, D.J. (Ret.), Specially Assigned

Opinion Filed February 10, 1989

*Jeffrey L. Amestoy, Attorney General, Susan R. Harritt, Assistant Attorney General,* and *Jim Harris, Law Clerk (On the Brief)*, Montpelier, for Plaintiff-Appellee.

*David W. Curtis, Defender General,* and *Henry Hinton* and *William A. Nelson, Appellate Defenders*, Montpelier, for Defendant-Appellant.

*Jean A. Swantko*, Island Pond, for amicus curiae Church at Island Pond.

**Peck, J.** Defendant, Richard Cantrell, was convicted after trial by jury of practicing medicine without a license in violation of 26 V.S.A. §§ 1311 and 1314. He raises four issues on appeal: (1) that the statute is impermissibly vague; (2) that the trial court improperly failed to instruct the jury on defendant's claim of religious exemption from prosecution; (3) that the information under which he was convicted failed to charge an offense; and (4) the jury was improperly permitted to consider hearsay evidence of other uncharged bad acts. We affirm.

Defendant is a member of the Northeast Kingdom Church in Island Pond, Vermont. His conviction of practicing medicine without a license was based on two incidents that occurred in June and July of 1982 at the religious community's health clinic. On the first occasion, defendant administered a local anesthetic and then surgically removed a wart from a woman's thumb. On the second occasion, he attended a young man who had cut his heel by administering a pain killer and then suturing the wound which required in excess of thirty stitches.

At the time of the actions in question defendant was not licensed to practice medicine. He had received some medical training and had been certified as an emergency medical technician in 1978 in the State of Georgia. He was not, however, certified to perform emergency medicine in the State of Vermont.

Defendant argues that his medical work was motivated by his religious convictions. He testified that his actions were based on "a command from the Lord; that we should be prepared to take

care of people; to care for people; in every aspect of life that we can help people, that we should do that . . . ." No evidence was provided, however, that his religion prevented him from obtaining a license to practice medicine.

## I.

The statute under which defendant was convicted provides, in pertinent part: "A person who, not being licensed, . . . practices medicine or surgery as defined in section 1311 of this title, . . . shall be imprisoned not more than three months or fined not more than $200.00 nor less than $50.00, or both." 26 V.S.A. § 1314(a). The relevant part of 26 V.S.A. § 1311 provides the following definition: "A person who . . . shall . . . give . . . for the use of any person, any drug, medicine or other agency or application for the treatment, cure or relief of any bodily injury, infirmity or disease .. shall be deemed a physician, or practitioner of medicine or surgery . . . ." 26 V.S.A. § 1311(1).

Before trial, defendant moved to dismiss the charges against him on the grounds that the provisions of the statute were "too vague to adequately inform [him] of the proscribed activity and therefore [were] violative of due process and the 14th Amendment of the Constitution of the United States." He argued that the definition of practice of medicine is unduly broad such that a person of ordinary intelligence cannot know "where medical practice begins and good faith attempts to administer aid and comfort to a friend or relative ends."

The trial judge denied defendant's motion, finding that defendant's conduct was clearly prohibited by the language of the statute. The court reasoned that, in determining whether the statute conveyed sufficient warning as to the conduct proscribed, it " 'must of necessity be examined in the light of the conduct with which a defendant is charged.' " *State* v. *Bartlett*, 128 Vt. 618, 622, 270 A.2d 168, 170 (1970) (quoting *United States* v. *National Dairy Products Corp.*, 372 U.S. 29, 33 (1963)). Consequently, it concluded that the fact that the statute might be unconstitutionally vague as applied to the conduct of others is irrelevant.

On appeal, defendant argues that the judge erred by using this standard to decide his vagueness challenge. He contends that because the statute implicates speech, which is constitutionally protected by the First Amendment to the United States Constitu-

tion, he has standing to challenge the constitutionality of the enactment on its face, even if it is not vague as applied to his conduct.

█ The doctrine of void-for-vagueness, generally stated, requires that penal statutes define a criminal offense with sufficient certainty so as to inform a person of ordinary intelligence of conduct which is proscribed, and such that arbitrary and discriminatory enforcement is not encouraged. *Kolender* v. *Lawson*, 461 U.S. 352, 357 (1983); *State* v. *Purvis*, 146 Vt. 441, 442, 505 A.2d 1205, 1206-07 (1985); *State* v. *Roy*, 140 Vt. 219, 229, 436 A.2d 1090, 1095 (1981). In this case, the defendant's conduct, surgically removing a wart, applying sutures to a wound and in both cases injecting a local anesthetic, clearly falls within the ambit of 26 V.S.A. § 1311 such that a person of ordinary intelligence would be informed that such conduct constituted the practice of medicine or surgery. Accordingly, as applied to *this* defendant, the penal statutes in question are not unduly vague. See *Purvis*, 146 Vt. at 442-43, 505 A.2d at 1207.

█ Ordinarily, a party whose particular conduct is adequately described by a criminal statute may not challenge that statute on the ground that "the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit," *Parker* v. *Levy*, 417 U.S. 733, 756 (1974), or because it "may conceivably be applied unconstitutionally to others in situations not before the Court." *New York* v. *Ferber*, 458 U.S. 747, 767 (1982). See *Purvis*, 146 Vt. at 442, 505 A.2d at 1206. However, this Court and the United States Supreme Court recognize that this general rule for standing does not apply when a statute implicating speech or expression is challenged on vagueness grounds. See, e.g., *Kolender* v. *Lawson*, 461 U.S. at 359; *State* v. *Purvis*, 146 Vt. at 443, 505 A.2d at 1207.

In *Kolender* v. *Lawson*, 461 U.S. 352, the United States Supreme Court noted that "we permit a facial challenge if a law reaches 'a substantial amount of constitutionally protected conduct.'" *Id.* at 359 n.8 (quoting *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)). This Court recently stated that "'[v]agueness challenges to statutes not involving First Amendment freedoms must be examined in light of the facts' presented . . . .," *State* v. *Purvis*, 146 Vt. at 443, 505 A.2d at 1207 (quoting *State* v. *Roy*, 140 Vt. at 229, 436 A.2d at 1095), implicitly exempting from the normal standing rule challenges to

statutes involving First Amendment rights. In addition, the United States Supreme Court has noted that it permits facial challenges on overbreadth grounds to laws involving a substantial amount of conduct protected by the First Amendment, and "we have traditionally viewed vagueness and overbreadth as logically related and similar doctrines." *Kolender*, 461 U.S. at 359 n.8 (citing *Keyishian* v. *Board of Regents*, 385 U.S. 589, 609 (1967); *NAACP* v. *Button*, 371 U.S. 415, 433 (1963); Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev. 67, 110-13 (1960)). We turn, then, to the statute in question to determine whether it reaches "a substantial amount of . . . protected conduct." *Kolender*, 461 U.S. at 359 n.8 (citation omitted).

26 V.S.A. § 1311 defines a practitioner of medicine as one who, amongst other things, advertises or holds himself out

> to the public as one skilled in the art of curing or alleviating disease, bodily injuries or physical or nervous ailments, or shall prescribe, direct, recommend, or advise, give or sell for the use of any person, any drug, medicine or other agency or application for the treatment, cure or relief of any bodily injury, infirmity or disease, or who follows the occupation of treating diseases by any system or method . . . .

Where possible, a statute must be construed to avoid constitutional infirmities. See, e.g., *New York* v. *Ferber*, 458 U.S. at 769 n.24. When deciding whether a statute reaches a substantial amount of constitutionally protected conduct, it must be "judged in relation to the statute's plainly legitimate sweep." *Broadrick* v. *Oklahoma*, 413 U.S. 601. 615 (1973); see *Kolender*, 461 U.S. at 358 n.8. We believe that such a construction is appropriate here, and that it preserves the statute from constitutional invalidation.

26 V.S.A. § 1314 makes illegal the practice of medicine or surgery, as defined by § 1311, absent licensure. Section 1311, while admittedly inartfully drafted, defines the practice of medicine or surgery to cover a large variety of activities which primarily involves conduct related to the treatment or cure of injuries, diseases and infirmities, and only incidentally implicates speech. Cf. *Philbrook* v. *Glodgett*, 421 U.S. 707, 713 (1975) (Court must not look at single sentence but must look to the provisions of the whole law); *State* v. *Trucott*, 145 Vt. 274, 282, 487 A.2d 149, 154 (1984) (in construing statute, Court will not excerpt a phrase and

follow its literal reading without considering the provisions as a whole).

26 V.S.A. § 1311(1) implicates constitutionally protected conduct only insofar as it partially defines practitioner of medicine as one who "shall prescribe, direct, recommend, or advise" for the cure or relief of any bodily ailment. The statutory scheme, however, is primarily directed at protecting the public health and welfare by limiting the practice of medicine to those persons who, having completed a required course of study, have been adjudged competent by their peers and are, accordingly, licensed to practice. See 26 V.S.A. §§ 1391, 1395, 1396.

"[A] party seeking to overturn a statute for vagueness on its face must in essence establish that it is unconstitutionally vague in at least a substantial number of the cases to which it could apply." *United States* v. *Rodgers*, 755 F.2d 533, 544 (7th Cir. 1985). Here, the statute is part of a valid and rational legislative scheme. Although some First Amendment activity is reached, the statute overwhelmingly regulates unprotected conduct, and leaves little possibility that the threat of the law's application will deter individuals from engaging in otherwise protected expression.[1] *Grayned* v. *City of Rockford*, 408 U.S. 104, 108-09 (1972). Thus, we conclude that the statute does not implicate a "substantial amount of protected conduct," and, consequently, defendant's facial challenge to the law must fail. See *Kolender*, 461 U.S. at 359 n.8.

## II.

Defendant next argues that the trial court erred by refusing to instruct the jury about his claim of religious exemption from prosecution. It is the duty of the trial court to instruct the jury on all essential elements of the crime and all material issues raised by the evidence and pertinent law. *State* v. *Neal*, 145 Vt. 423, 430, 491 A.2d 1025, 1030 (1985); *State* v. *McLaren*, 135 Vt. 291, 296, 376 A.2d 34, 38 (1977). In order to be entitled to an instruction on a particular defense, defendant must establish a prima

---

[1] We also note that the speech covered by the statute, advice or recommendations regarding medical treatment, is more closely akin to commercial speech than political speech, and consequently receives a lesser constitutional protection. See *Flipside*, 455 U.S. at 496.

facie case on each of its elements. *State v. Squires*, 147 Vt. 430, 431, 519 A.2d 1154, 1155 (1986).

In this case, defendant requested that the court charge the jury that:

> If you find, based upon the evidence presented, that the defendant was motivated in his actions by his religious beliefs and moral convictions, and that the state has failed to demonstrate a compelling interest for its intrusion upon the defendant's practice of his religious beliefs, then you must find the defendant not guilty of the offenses charged.

At trial, defendant testified as to his religious motivation for providing medical care to the people of his community. He presented no evidence, however, that his religious beliefs prevented him from complying with the law by becoming licensed to practice medicine. The "trial court is not required to charge matters not covered by the evidence."[2] *State v. Day*, 149 Vt. 165, 167, 540 A.2d 1042, 1043 (1987). See *Squires*, 147 Vt. at 431, 519 A.2d at 1155.

## III.

Defendant next contends that the information under which he was convicted fails to charge an offense because it omits an allegation that the religious exemption does not apply.[3] The informations in this case allege that defendant, not being licensed, practiced medicine and surgery by giving "an application for the treatment and relief of a bodily infirmity" by injecting painkiller and removing a wart from the hand of a woman and by injecting a local anesthetic into the heel of a young man and suturing his wound.

---

[2] We note that defendant never raised the defense that he was covered by the exemption in 26 V.S.A. § 1312 for "persons who merely practice the religious tenets of their church without pretending a knowledge of medicine or surgery." Rather, he testified that his religious conviction compelled him to provide a medical service because of his knowledge of medicine and surgery and his "natural abilities."

[3] The State contends that because this issue was not raised below it was waived. We do not agree. V.R.Cr.P. 12(b)(2) provides an exception for a defense based on defects in the information resulting in a failure to charge an offense. This defense may be raised at any time during the pendency of the proceeding and even on appeal. *State v. Bradley*, 145 Vt. 492, 494, 494 A.2d 129, 131 (1985); V.R.Cr.P. 12, Reporter's Notes.

V.R.Cr.P. 7(b) states that "the information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." It must "set forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable [him] to make intelligent preparation for [his] defense." *State* v. *Bradley*, 145 Vt. 492, 495, 494 A.2d 129, 131 (1985) (quotations omitted).

In this case, the statutory exemption in 26 V.S.A. § 1312 for "persons who merely practice the religious tenets of their church without pretending a knowledge of medicine or surgery," is not "so incorporated with [§ 1314] as to constitute a material part of the definition or description of the offence." *State* v. *Carruth*, 85 Vt. 271, 273, 81 A. 922, 923 (1911). Consequently, we hold that the information is sufficient to charge a crime under 26 V.S.A. § 1314. See *United States* v. *Stout*, 667 F.2d 1347, 1353 (11th Cir. 1982); *United States* v. *Cartano*, 534 F.2d 788, 791 (8th Cir. 1976).

## IV.

Defendant's final claim is that his conviction should be reversed because the jury was permitted to consider evidence of an uncharged criminal act. Prior to trial, defendant made a motion in limine to keep out evidence of other uncharged criminal activity on the part of defendant. This motion was granted. At trial, however, the prosecution elicited testimony in its case-in-chief about an incident in which defendant applied a drain to the heel of the young man whose foot he had repaired because it had become infected.

Defendant objected to the testimony and requested cautionary instructions or a mistrial; both of which the court denied. Defendant argues on appeal that this testimony involved inadmissible evidence of uncharged bad acts, pursuant to V.R.E. 404(b), and was highly prejudicial.[4] The State contends that the testimony was permissible because the act described was simply a continuation of the original treatment, and, as such, was not a separately chargeable act. Further, the State argues that this evidence was

---

[4] Defendant also argues that the evidence was impermissible hearsay. However, to the extent the testimony involved hearsay, it was properly admitted pursuant to V.R.E. 803(3), because it was a statement of the defendant's then existing physical condition.

an "invited error" since, in his opening statement, the defense counsel asserted that "the operation was a complete success." *State* v. *Arbeitman*, 131 Vt. 596, 599, 313 A.2d 17, 19 (1973).

■ Vermont Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." See *State* v. *Moran*, 141 Vt. 10, 19-20, 444 A.2d 879, 883 (1982). Even where the prosecution intends to offer evidence of uncharged criminal acts for other purposes, it must notify defendant prior to trial. V.R.Cr.P. 26(c). No notice is required, however, for evidence of offenses used for impeachment or in rebuttal. *Id.*

In this case, the evidence of the subsequent treatment of the infected foot was not a continuation of the original illegal act, but was evidence of a separate, uncharged violation of 26 V.S.A. § 1314. See generally *State* v. *Bonilla*, 144 Vt. 411, 414, 477 A.2d 983, 985-86 (1984) (the separate acts committed must be closely related in time or circumstances as to constitute one criminal transaction). However, in view of the fact that defendant's opening statement indicated that he would be presenting evidence that the foot healed without complication, and since defendant presented such evidence in his case-in-chief, and failed to show that the testimony was prejudicial, we conclude that even if there was error, it was harmless. See *State* v. *Morrill*, 127 Vt. 506, 512-13, 253 A.2d 142, 146-47 (1969); V.R.Cr.P. 52(a); see also *State* v. *Arbeitman*, 131 Vt. at 599, 313 A.2d at 19 (no prejudice where allegedly improper comment made by prosecution in open court was made in anticipation of a question by defense counsel). Accordingly, defendant's final claim of error must fail.

*Affirmed.*

**Allen, C.J.,** dissenting. My departure from the majority's reasoning begins with their assertion that the statute does not implicate a substantial amount of protected conduct. It may well be that the statutory scheme is directed at protecting the public health and welfare by limiting the practice of medicine to those deemed competent in that area, but the broad, almost limitless, sweep of its prohibitions brings common everyday speech and activity within its grasp. Conceding that the topics regulated by 26 V.S.A. § 1311(1) do not relate to the traditional areas of free

speech afforded protection by the First Amendment, discussion of the topics it does cover probably equals or exceeds, in quantitative terms, discussion of traditional areas. Ruminations about illness and injury comprise a fair portion of our daily conversations and should be entitled to First Amendment protection. That the statute may have a legitimate application does not save it from facial invalidation if it makes unlawful a substantial amount of protected conduct. *City of Houston* v. *Hill*, 482 U.S. 451, 459 (1987). Because it is "susceptible of regular application to protected expression." it is overbroad and facially invalid. *Id.* at 467.

The statute further fails to provide fair warning to potential offenders that certain conduct is proscribed and does not have sufficiently precise standards to avoid arbitrary and discriminatory enforcement, thereby failing the two-pronged void-for-vagueness test set forth in *State* v. *Purvis*, 146 Vt. 441, 442, 505 A.2d 1205, 1206-07 (1985). It covers a wide range of common speech and conduct and fails to distinguish innocuous from criminal conduct.* In addition to providing no clear notice of what conduct is illegal, it gives no guidance to law enforcement officers in applying the statute. The police would indeed be busy enforcing this law by its literal terms. Since it is not feasible for the statute to be literally enforced, law enforcement officials must rely wholly on their own judgments in deciding when to enforce and when to ignore the law. This is impermissible. *City of Houston*, 482 U.S. at 466-67. "Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections. Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law." *Smith* v. *Goguen*, 415 U.S. 566, 575 (1974). As the statute criminalizes a substantial amount of protected speech and conduct and does not provide fair warning of the conduct prohibited or adequate standards for enforcement, I believe it to be unconstitutional on its face and would so hold.

---

\* It would, for example, proscribe advice given to a friend for relief of a headache or cold, the recommendation for relief of a pulled muscle by one athlete to another, or the suggestion that a bandage be applied to a wound. These and the many other examples of everyday conduct that are forbidden by the statute support a finding of unconstitutional vagueness and are not just "uncertainty at the margins" or "a parade of bizarre hypothetical cases" for which vagueness would not be found. See *Levas & Levas* v. *Village of Antioch*, 684 F.2d 446, 451 (7th Cir. 1982).