The defendant was charged with the crime of evading responsibility in the operation of a motor vehicle, in violation of § 14-224 of the General Statutes. He was tried to the jury, which returned a verdict of guilty. He has appealed to this court, claiming error in four rulings on evidence.
The following facts could reasonably have been found by the jury. On January 30, 1961, at about 11:30 p.m., a yellow 1955 Plymouth automobile, making a "skidding noise" which was heard at a distance of more than 100 feet, ran into a wire fence on the Royal-McBee Corporation property on New Park Avenue in Hartford. The operator of the vehicle did not get out. After remaining a moment or so against the fence, the vehicle backed upon the street and proceeded northerly on New Park Avenue, making a scraping noise as it went along at a moderate speed. A young man who had witnessed the accident as he was emerging from a drugstore across the street got into his car, which was parked in front of the drugstore, facing north, and followed the Plymouth automobile. When the latter vehicle stopped for a traffic light about two *Page 387 
blocks away, the witness wrote the registration number of the Plymouth upon a piece of paper, and he returned to the drugstore, where he and his father telephoned to the police information of the incident, including a description and the registration number of the vehicle that had run into the fence. With this information, the police were able to seek out and interrogate the defendant.
The witness was unable to see who was operating the Plymouth, and at the trial he could not remember the registration number he had copied on paper. The fence is a chain-link fence, supported by metal posts, standing about six feet high. A section of it, measuring more than twenty feet in length, was pushed and bent inward so far by the Plymouth that some of it almost touched the ground. Shortly after the accident, the damaged section of the fence was replaced with a new fence by the Anchor Post Products, Inc.
Two assignments of error have to do with two extrajudicial statements of the defendant which were received in evidence over his objection. After the evidence outlined above had been introduced, the state was allowed to place in evidence a signed statement given by the defendant to the police on February 18, 1961. The pertinent part of the statement reads as follows: "I was travelling north on New Park Avenue and the last thing I remember was the area of Prospect Avenue and New Park Avenue before I fell asleep. When I awoke I was stopped up against the fence in front of the Royal Typewriter Company [Royal-McBee Corporation]. I then got out of my car, looked at my right front fender and couldn't see clearly how much damage was done to the fence and drove home. I did not notify police or anyone else. I just drove it to the Sunoco Station at Flatbush Avenue and New Park Avenue the next day." The court also allowed the *Page 388 
arresting officer to testify that the defendant admitted being involved in the accident, explaining that he had fallen asleep and was awakened when he "struck an object." He also told the policeman that he had gotten out of his car and when he observed there was little, if any, damage to the fence, he left for home because it was late and he saw no one there. He also said he had the damage to his car repaired.
There is no question that both extrajudicial statements were voluntary. The defendant did not take the stand to deny or vary them. His sole objection to them is that insufficient independent evidence of the corpus delicti had been introduced to authorize their admission in evidence.
The Connecticut rule on this subject was only recently reaffirmed by our Supreme Court to be that the corpus delicti, that is, that the crime charged has been committed by someone, cannot be established by the extrajudicial confession of the defendant unsupported by corroborative evidence. State
v. Doucette, 147 Conn. 95, 98. "The independent evidence must tend to establish that the crime has been committed and must be material and substantial, but need not be such as would establish thecorpus delicti beyond a reasonable doubt apart from the confession. . . . Properly this [extrinsic] evidence should be introduced and the court satisfied of its substantial character and sufficiency to render the confession admissible, before the latter is allowed in evidence." State v. LaLouche, 116 Conn. 691,695; State v. Skinner, 132 Conn. 163, 166; State
v. Doucette, supra, 99.
A review of the evidence recounted above and received before the court allowed the admission of the defendant's confessions reveals direct proof of three of the four elements necessary to sustain a *Page 389 
conviction of the crime of evading responsibility, namely: (1) damage by a motor vehicle to the property of another, (2) knowledge by the operator that such damage had been caused, and (3) failure of the operator to give his name, operator's license number and registration number to a witness at the scene or to report the accident to the police. As for the fourth element, operation of the vehicle, the police were led to the defendant by the description and registration number of the offending automobile supplied by the eyewitness, from which the reasonable and logical inference could be drawn that the defendant was the owner of the vehicle. This amounted to prima facie evidence that the defendant was the operator thereof at the time and place of the accident. General Statutes § 14-107. We find that the corpus delicti was established by independent evidence which was material and substantial and that the court was amply justified in allowing the defendant's confessions in evidence.
The two remaining assignments of error deal with the admission in evidence over the objections of the defendant of a fence repair bill (exhibit A) and a slip of paper (exhibit B) bearing the writings of a witness and others. The objections to the admission of the repair bill through an employee of the Royal-McBee Corporation are upon the grounds that it is hearsay evidence and that it should have been offered through the repairer so that the defendant might have cross-examined him as to the reasonableness of the bill. "[P]roof of the expenses paid or incurred affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or through the application of the trier's general knowledge of the subject matter, its reasonableness will be presumed."Carangelo v. Nutmeg Farms, Inc.,115 Conn. 457, 462; see Flynn v. First National Bank *Page 390 Trust Co., 131 Conn. 430, 436. While it is undoubtedly the better practice to offer in evidence a bill for services and materials through the one who rendered and delivered the same, we cannot say the court was in error in admitting the fence repair bill on the grounds stated, particularly in a case such as this, where the only purpose of offering the bill in evidence was to put in corroborative evidence of some damage caused to the fence. The reasonableness of the bill was not in issue.
Concerning exhibit B, this paper was admitted over the objection that it was hearsay evidence. According to the testimony of the police officer through whom the paper was offered, some of the writing on it was his and represents information he received from others at the scene of the accident during his investigation, and the other writing thereon was made by others not identified by the officer. The paper was inadmissible on the ground stated and should not have been received in evidence. However, the paper only contained matters which had been testified to by other witnesses, except that the damage to the fence is described in the paper as "heavy damage." This is not a civil suit for the recovery of damages, and whether the damage to the fence was light or heavy is immaterial as long as the other elements of the crime charged have been proven. The action of the court in allowing exhibit B in evidence was harmless and did not constitute reversible error.
The defendant argues in his brief that the court erred in denying his motion to set aside the verdict on the ground that the evidence was not sufficient to prove guilt beyond a reasonable doubt. He did not make this the subject of an assignment of error, as is required, and we are not bound to consider it. Practice Book § 409; Cir. Ct. Rule 7.51.1. A review *Page 391 
of all the evidence which was made by us in passing upon claims made in the assignments of error suggests no reason why we should not adhere to the rule.
 There is no error.
In this opinion CICALA and MARTIN, Js., concurred.