# STATE OF CONNECTICUT *v.* LUIS ROSARIO
## (AC 22379)

Lavery, C. J., and Schaller and Flynn, Js.

Argued November 20, 2003—officially released February 24, 2004

*William F. Gallagher,* with whom, on the brief, were *Hugh D. Hughes* and *Joseph G. Walsh,* for the appellant (defendant).

*Susan C. Marks,* supervisory assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Corinne L. Klatt,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Luis Rosario, was the driver of a vehicle that struck and killed a pedestrian. As a consequence of that accident, the state charged him in a three count information with evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a), manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b, and manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1).[1]

---

[1] The state improperly phrased count one of the information, charging the defendant with evasion of responsibility in the operation of a motor vehicle, by stating that he had violated General Statutes § 14-224 (a) in that the defendant, while in the "operation of a motor vehicle on a public road, was knowingly . . . involved in an accident causing the serious physical injury and subsequent death of Yvonne Spaziani, and failed *to stop and*

After a trial by jury, the defendant was convicted of evasion of responsibility in the operation of a motor vehicle and acquitted of manslaughter in the second degree. He was sentenced to ten years in the custody of the commissioner of correction, the execution of which was to be suspended after he had served eight years with five years of probation thereafter. When the jury was unable to reach a unanimous decision as to the second count, manslaughter in the second degree with a motor vehicle, the court declared a mistrial as to that count. On appeal, the defendant claims that the court acted improperly in that it (1) denied his motion for a judgment of acquittal on the charge of evading responsibility, (2) did not suppress the tests of his blood alcohol content from the night of the accident, (3) precluded evidence of the victim's blood alcohol content and (4) prevented the defendant on cross-examination from introducing portions of his statement to the police when those portions were necessary to clarify other portions that were brought out in the state's direct examination. We address the first issue together with the only one of the defendant's remaining evidentiary issues that relates to his conviction on the evasion of responsibility charge. We decline to review the remaining evidentiary issues relating to the charge of manslaughter in the second degree with a motor vehicle on which the jury could not agree, thereby resulting in a mistrial as to that count. On that charge, there has been no final judgment. We affirm the judgment of the trial court as to the conviction of the crime of evasion of responsibility in the operation of a motor vehicle.

*render assistance and provide his name, address and operator's number* to any witnesses to the said incident, *and failed to immediately report said incident to a police officer, a state police officer, or at the nearest police station* . . . ." (Emphasis added.) An operator does not have a statutory obligation to give information both to any witnesses or to police at the scene and also to police at the nearest police station.

The following evidence was presented to the jury. On January 23, 2000, at approximately 8:30 p.m., the deceased, Yvonne Spaziani, was leaving the Park East Cafe in Waterbury to wait for a taxicab she had called to take her and her son home. Rene Cunningham, a patron of the Park East Cafe, also was leaving, and when he noticed Spaziani and her son waiting, he offered them a ride home. Cunningham's car was parked across the street. After letting several cars pass and looking both ways to make certain the road was clear, the three of them began to cross the road with Cunningham on the left, the child in the middle and Spaziani on the right, closest to the path of the defendant's oncoming vehicle.

As they reached the center of the street, Cunningham noticed the defendant's car approaching them at a high rate of speed. Cunningham called out to Spaziani and picked up her child by his jacket collar, pulling him to safety. Spaziani was still in the road when she was struck by the defendant's vehicle, causing her death.

Several people witnessed the accident, including Cunningham and another motorist who had been proceeding in the opposite direction from the defendant's vehicle. The defendant did not stop immediately after striking Spaziani but, instead, drove directly to his home. When he arrived at his home, the defendant was upset at what had just happened. After speaking with his wife, the defendant turned himself in at the Waterbury police station approximately twenty minutes after the first report of the accident.[2] Once at the police station, the defendant reported what had happened, gave a voluntary written statement and consented to blood and urine tests.

---

[2] We note that the evidence supports an inference that someone at the scene reported the accident immediately after it occurred.

## I

The defendant's first claim relates to the court's denial of his motion for a judgment of acquittal, which he made after the jury returned a verdict of guilty as to the charge of evading responsibility. See General Statutes § 14-224 (a). His claim on appeal is that the state failed to prove the last element of the crime, as charged, that is the duty to report his name, address and other pertinent information. The defendant argues that he complied with the requirements of the statute because he arrived at the police station approximately twenty minutes after the accident and fully cooperated with the police by giving the statutorily required information and submitting to blood and urine tests. Review of this claim necessarily entails our review of what § 14-224 requires of a motorist when personal injuries or physical damage result from a collision. This is so because if the statute mandates that a driver at once stop when knowingly involved in such a situation, then the uncontroverted evidence of the defendant's failure to stop and the factual evidence from which the jury could have inferred that the defendant had knowledge of the collision with Spaziani was sufficient evidence on which to convict the defendant of the crime of evasion of responsibility in the operation of a motor vehicle.

The defendant's claim presents a question of statutory interpretation over which our review is plenary. See *State* v. *Hackett*, 72 Conn. App. 127, 132, 804 A.2d 225, cert. denied, 262 Conn. 904, 810 A.2d 270 (2002). "It is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common

law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 493, 778 A.2d 33 (2001).

We first analyze the language of the statute. Section 14-224 (a) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes serious physical injury, as defined in section 53a-3, to or results in the death of any other person shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to any officer or witness to the death or serious physical injury of any person, and if such operator of the motor vehicle causing the death or serious physical injury of any person is unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer, for any reason or cause, such operator shall immediately report such death or serious physical injury of any person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the death or serious physical injury of any person and his name, address, operator's license number and registration number."

The defendant, in his brief, argues that "§ 14-224 (a) requires proof of four elements: Operation of a motor vehicle, knowledge by the operator of his involvement in an accident, injury to a person other than the operator, caused by the accident, and failure by the operator to give specified information." (Internal quotation marks omitted.) The defendant did not mention as a necessary element the statutory requirement to stop immediately and to render assistance. The defendant argues that the language of the statute supports a con-

clusion that there are two alternative courses of action permitted by the statute insofar as the operator's reporting of the accident is concerned. The operator can provide the required information at the scene or at the nearest police station. In permitting reporting off scene to a constable, police officer, motor vehicle inspector or at a police station, the statute does provide for such a conditional alternative. The choice between the statutory alternatives, however, is not left to the discretion of the operator. The statute provides that only when an operator is "unable . . . for any reason or cause" to furnish the specified information at the scene may he do so "immediately" to a constable, an inspector of motor vehicles, a state or local police officer or at the nearest police station.

The language of the statute requires the operator to "at once stop and render such assistance as may be needed . . . ." General Statutes § 14-224 (a). The language of the statute does not support the conclusion, implicit in the defendant's argument, that an operator may comply with the statute by failing to stop at the scene and fulfilling the reporting requirements off scene.

Section 14-224 imposes cumulative duties on operators involved in accidents. In construing a similar statute,[3] the California Supreme Court provided an

[3] Cal. Code § 20001 (a) provides: "The driver of any vehicle involved in an accident resulting in injury to any person, other than himself or herself, or in the death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004."

Cal. Code § 20003 (a) provides: "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his or her name, current residence address, the names and current residence addresses of any occupant of the driver's vehicle injured in the accident, the registration number of the vehicle he or she is driving, and the name and current residence address of the owner to the person struck or the driver or occupants of any vehicle collided with, and shall give the information to any traffic or police officer at the scene of the accident. The driver also shall render to any person injured in the accident reasonable assistance,

illustration of how cumulative successive duties may be imposed: "[A] defendant may be convicted under said section . . . of a failure to do any one of several things required of him in the event of a collision with another car or with a human being. Of them he may be convicted of a failure . . . to stop immediately . . . or . . . to give his name and address . . . or . . . to render necessary assistance." *People* v. *Scofield*, 203 Cal. 703, 710, 265 P. 914 (1928). Section 14-224 (a) proceeds to outline the reporting requirements only after instructing that the operator must stop. At this point, the manner in which the required information may be reported is phrased in the alternative, but the operator may proceed to the second reporting alternative, which might allow him to leave the scene of the accident at which he has already stopped, only if he is "unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer . . . ." General Statutes § 14-224 (a). The second alternative of reporting to the nearest police station applies to an operator who already has stopped at the scene but is unable for any reason at that point to provide the required information. The defendant's interpretation of the language of the statute ignores an operator's obligation to stop and to render assistance.

The evidence amply supports the conclusion that one of the reasons the defendant failed to stop at the scene was that he was scared by what had occurred. The defendant's emotional state, however, does not excuse his actions.[4] We observe that General Statutes § 14-224

including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if that transportation is requested by any injured person."

[4] We recognize that a situation might arise in which the operator's emotional state and subsequent flight from the scene are grounded in facts that could excuse his failure to stop. See, e.g., *Isom* v. *State*, 37 Ala. App. 416, 69 So. 2d 716 (1954) ("According to the testimony of the defendant he was confronted with danger to life or great bodily harm. It would be unjust and unreasonable to declare that, despite this, he was required to remain at

(a) allows an operator to report an accident at the nearest police station if he is unable to give the statutorily required information "to the person injured or to any witness or officer, *for any reason or cause* . . . ." (Emphasis added.) An operator's emotional state may be relevant to the issue of whether he truly was unable to provide the required information at the scene of the accident, but the operator's emotional state alone will not excuse his failure to comply with the statute's command that he "shall at once stop and render such assistance as may be needed . . . ." Although the reporting requirements are phrased in the alternative, the statute's directive to stop at once does not provide a similar alternative.[5] Section 14-224 does not leave an operator an excuse for failing to stop for any reason as it does for failing to give the required information at the scene.[6] The defendant observes in his brief that "[s]uch a rule

the scene and go through the formality of complying with each and every requirement of the statute."). "Accused's honest belief that he was in danger of bodily harm if he remained at the scene of the accident may justify his conduct in leaving without giving identification; but the alleged fear of accused that he might have been assaulted if he had stopped to comply with the statute does not excuse his failure to comply, where there was not any attempt or threat to assault him or the display of any weapon with which an assault might have been committed." 61A C.J.S. 553, Motor Vehicles, § 676 (1970). There was no evidence of any threats or a display of weapons at the scene of the accident in the present case that might have justified the defendant's failure to stop.

[5] We note that many similar hit-and-run statutes of other jurisdictions provide that the operator shall immediately stop at the scene of the accident "or as close thereto as possible." See, e.g., Ala. Code § 32-10-1; Ark. Code Ann. § 27-53-101; Colo. Rev. Stat. § 42-4-1601; Ga. Code Ann. § 40-6-270; Haw. Rev. Stat. § 291C-12; Idaho Code § 18-8007.

[6] We recognize that "it is obvious that criminal liability should not attach in all cases where a literal application of the language of the statute might be made." *People* v. *Scofield*, supra, 203 Cal. 708. For example, several jurisdictions recognize physical impossibility as a potential defense to a charge of "hit and run." See id.; *State* v. *Lloyd*, 104 Wis. 2d 49, 59, 310 N.W.2d 617 (App. 1981). In the case of physical impossibility, it would be improper to say that the defendant chose not to stop. In the present case, however, there was no evidence that the defendant was physically unable to stop his vehicle.

of law exposes motor vehicle defendants involved in an accident to ten year sentences every single time one of them gets scared and has to think things over before going to the police." As unfair as this result may appear to the defendant and others faced with similar situations, however, this is precisely the effect of § 14-224 as it was enacted by the General Assembly.

We next analyze the legislative history of the statute. The defendant and the state both argue that the legislative history of § 14-224 supports their respective interpretations. We conclude, however, that the legislative history establishes that the failure to stop immediately cannot be cured at some later time by an operator reporting the incident to the police. The defendant cites the fact that the most recent amendment to § 14-224, Public Acts 1997, No. 97-291, § 3 (P.A. 97-291), increased the penalty specifically designed to remedy the problem of intoxicated drivers who flee the scene of an accident. The legislature sought to close a loophole in the statutes that formerly would encourage intoxicated drivers to flee the scene of a fatal accident and allow evidence of alcohol in their breath or blood to dissipate. As a result, these drivers would be punished under what was the more lenient evasion of responsibility statute rather than under General Statutes § 53a-56b, which punishes drivers who operate motor vehicles while under the influence of intoxicating liquor of drugs and cause the death of another person, and which provides a penalty of ten years.[7]

---

[7] In the Senate debate on P.A. 97-291, Senator Thomas F. Upson stated in relevant part: "In my area, a young man was killed last year, actually a good friend of a member of my family, was killed one night by a drunk driver. And of course, the drunk driver was not caught and it turned out maybe four hours later he was arrested.

"But, he left the scene of the accident after killing. [It has] been proved that he killed this boy. But, because he did not test within a two hour period, remember for drunk driving, you have to test within two hours . . . he was never tested for drunk driving.

"So what I'm asking is, that the evading responsibility laws, instead of having the penalty being one to five years . . . be one to ten years and that

Although the amendment addressed that loophole, we disagree that § 14-224, itself, had as its principal purpose the apprehension of drunken drivers who leave the scene of an accident and are unable to be tested. The statute predated by decades the 1997 Senate debates concerning drunken driving. "The purpose of the statute on evading responsibility is to ensure that when the driver of a motor vehicle is involved in an accident, he or she will promptly stop, render any necessary assistance and identify himself or herself. The essence of the offense of evading responsibility is the failure of the driver to stop and render aid." *State* v. *Johnson*, 227 Conn. 534, 544, 630 A.2d 1059 (1993); see also *State* v. *Sebben*, 185 N.W.2d 771, 774 (Iowa 1971) (describing multiple legislative objectives of penalizing hit-and-run drivers); *State* v. *Severance*, 120 Vt. 268, 272, 138 A.2d 425 (1958) (same). The legislative history supports an inference that the *increased penalty* for evading responsibility in the operation of a motor vehicle was meant to discourage drunken drivers from avoiding testing by leaving the scene of an accident. We note that the goal of the increased penalty was not thwarted in this case where there was a delay of reporting off scene of only approximately twenty minutes. However, the legislative history does not suggest that the requirement of stopping and rendering assistance was no longer one of the purposes of the statute. Both before and after the adoption of P.A. 97-291 amending § 14-224, the legislature was concerned with operators who failed to stop after being involved in accidents. Before and after the adoption of P.A. 97-291, the requirement of stopping at the scene bound the operator of a motor vehicle who caused personal injury or death.

the fine will be not more than [$10,000]. So I'm increasing . . . the fine from $5,000 to $10,000 and the imprisonment from one to ten years instead of one to five years." 40 S. Proc., Pt. 8, 1997 Sess., p. 2522, remarks of Senator Thomas F. Upson.

Section 14-224 was not designed solely to apply to drunken drivers.[8] On the contrary, the fact that intoxicated drivers could use § 14-224 as a loophole suggests that the relationship between this statute and § 53a-56b, which punishes intoxicated drivers who cause death, was not considered by the legislature until very recently. It appears that § 14-224 was designed, in part, to encourage operators who are involved in accidents to stop and to render whatever assistance they can rather than to leave victims who may have serious or potentially fatal injuries to fend for themselves.[9]

The courts of this state have not provided a settled and complete description of the elements of § 14-224. See generally *State* v. *Jordan*, 5 Conn. Cir. Ct. 561, 564, 258 A.2d 552 (1969); *State* v. *Richter*, 3 Conn. Cir. Ct. 99, 101, 208 A.2d 359 (1964); *State* v. *LeTourneau*, 23 Conn. Sup. 420, 424, 184 A.2d 180 (1962); *State* v. *LaRiviere*, 22 Conn. Sup. 385, 389, 173 A.2d 900 (1961). *Jordan*, *Richter*, *LeTourneau* and *LaRiviere* all describe the necessary elements of § 14-224, which are (1) operation, (2) knowing involvement in a collision or accident and (3) damage to person or property. However, *LaRiviere* and *LeTourneau* fail to mention the statutory duties to stop and to render assistance. *Richter* describes the duty to stop, but fails to mention the duty to provide assistance. Finally, *Jordan* and *Richter* make no mention of the statutory alternative of reporting

[8] "The statutory requirement of stopping and rendering aid to the injured is merely a codification of the common law objective of preventing further harm which the actor realizes or should realize threatens the injured person." *Karl* v. *C.A. Reed Lumber Co.*, 275 Cal. App. 2d 358, 361, 79 Cal. Rptr. 852 (1969).

[9] The defendant's failure to stop and to render assistance in this case does not appear to have contributed to the victim's subsequent death. One of the patrons of the Park East Cafe was an emergency medical technician, and an ambulance arrived at the scene very soon after the accident. Nevertheless, an operator cannot avoid his obligations under § 14-224 by engaging in post hoc speculation as to whether his assistance would have been necessary.

information to police when the defendant is unable to do so at the scene.[10] "Though there is a presumption in some circumstances that when [the legislature] reenacts a statute without change it is aware of a judicial interpretation of that statute and intends to adopt it . . . that presumption applies only to settled judicial constructions . . . ." (Citations omitted; internal quotation marks omitted.) *In re Century Brass Products, Inc.*, 22 F.3d 37, 40 (2d Cir. 1994); see also *Martin* v. *Plainville*, 240 Conn. 105, 110, 689 A.2d 1125 (1997).[11]

We therefore conclude that the defendant's interpretation of the statute is incorrect. "In many jurisdictions there are similar statutes imposing duties upon a motorist who has been involved in an accident. Such statutes impose no duties other than those which good conscience will direct a driver to observe. They are directed primarily against a callous class known as 'hit and run' drivers. These statutes are designed to prohibit drivers of motor cars from seeking to evade civil or criminal liability by escaping, before their identity can be established, and from leaving persons injured in collisions, in distress or danger, for want of proper medical or surgical treatment. . . . The duty imposed on the driver of the vehicle by the statute is not passive but requires positive, affirmative action, that is to say, to stop and to give aid and information . . . . Such duty varies to some extent in the several jurisdictions where such or similar statutes are in force, depending upon the phraseology of the statutes, and where several distinct acts are required the omission of any one or more of them constitutes a violation." (Citations omitted.)

[10] The concurrence indicates that we state that *Jordan, Richter, LeTourneau* and *LaRiviere* failed to decide the elements of the statute. We neither state that nor hold that.

[11] "[T]he legislature is presumed to be aware of the interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *Martin* v. *Plainville*, supra, 240 Conn. 110.

*State* v. *Severance, supra,* 120 Vt. 272–73; see also *State* v. *Mann,* 135 Wis. 2d 420, 429, 400 N.W.2d 489 (Wis. App. 1986) (statute imposes cumulative duties).

To establish a violation of § 14-224 (a), the state first had to prove that (1) the defendant was operating a motor vehicle, (2) the defendant was knowingly involved in an accident and (3) that accident caused the death or serious physical injury of any other person. Once those predicate elements were established, the state could prove a violation of § 14-224 (a) if it proved that the defendant failed to fulfill any one or more of the following duties required of him by the statute: (4) that the defendant failed to stop at once and render such assistance as may have been needed; or (5) unless there was evidence that the defendant was unable, for any reason or cause, to provide the statutorily required information at the scene, that the defendant failed to give his name, address, operator's license number and registration number to the person injured, any officer or a witness to the accident; or (6) if there was evidence that the defendant was *unable,* for any reason or cause, to provide the statutorily required information at the scene, that the defendant failed to report immediately the death or serious physical injury to a police officer, a constable, a state police officer or an inspector of motor vehicles, or at the nearest police precinct or station, and to give the same information as to his name, address, operator's license number and registration number to the police officer, constable, state police officer or inspector of motor vehicles together with additional information that would not have been required had the report been made at the scene of the accident, namely, the location and circumstances of the accident.

It is undisputed that the state presented sufficient evidence to establish the predicate elements of the statute. After finding the predicate elements of the statute

to be satisfied, the jury had to find only that the defendant did not stop to convict him of evasion of responsibility in the operation of a motor vehicle. Once the jury reached this conclusion, there was no need for it to inquire further as to whether he was unable to give information at the scene.

Although neither party during trial or on appeal challenged the jury instructions given by the court, we note that the instructions initially given by the court did not describe the elements of the statute adequately.[12] The defendant argues that there was insufficient evidence to convict him of the evasion of responsibility charge on the basis of the elements set forth in this initial, inadequate charge.[13] The court subsequently issued a supplemental instruction, however, that explained that it was the state's burden to prove "that [the defendant]

[12] The trial court initially instructed the jury that to prove the defendant guilty of a violation of § 14-224, the state had to establish the three predicate elements of operation, involvement in an accident causing injury or death, and knowledge of the accident, and that the defendant failed to provide the requisite information. This instruction was given at the request of the defendant, and the state did not object to the charge as given. The court then proceeded to read the text of the statute. Nowhere in its initial instruction on the elements of § 14-224 did the court explain the fact that an operator must stop his vehicle at once and give assistance. This initial instruction was not a correct statement of the law.

[13] We address, as we think we should, the issues raised by the defendant. In his brief, the defendant set forth four elements of the crime originally charged by the state and claimed that the evidence was insufficient to prove a violation of the fourth, namely, "failure to give the specified information." The defendant specifically argues in his brief that "[n]either the state nor the defendant took exception to this charge, and the state cannot now claim that it inaccurately states the law." An analysis of the record of the recharge, which the defendant did not cite in his brief, reveals that the court correctly recharged that the defendant was required to stop at the scene, something it did not say in the initial charge. We address what necessary elements the statute requires to be proved because the state is not required to prove a failure to give the required information if the defendant operator failed to stop at the scene. The defendant conceded at oral argument that if stopping at the scene is a necessary element of the crime, then "[the defendant] lose[s] on that issue."

failed to stop and render assistance and provide his name, address, and operator's number to any witnesses to the incident, or that—and that he failed to immediately report the incident to a police officer, a state police officer or the nearest police station." This supplemental instruction was sufficient to cure the problems that might have arisen had the jury been left solely with the court's initial, improper instruction on the elements of § 14-224 (a).

The court's use of the words "or that—and that" in the supplemental instruction possibly could have confused the jury as to the necessary elements of § 14-224. See *Mack* v. *Perzanowski*, 172 Conn. 310, 314–15, 374 A.2d 236 (1977) (discussing use of "and/or" in jury instruction). Use of the and/or conjunction was improper, but the defendant would not have suffered any prejudice regardless of which conjunction the jury applied in this case.[14] Proof that the defendant failed to stop at the scene would have been sufficient to support a conviction under § 14-224. It is undisputed that the state presented sufficient evidence to establish that the defendant failed to stop and render assistance at the scene. The defendant's own statement to the police on the night of the accident was that he did not stop. Any possible error in the court's instruction regarding the duty to report required information is therefore harmless, and no evidence was necessary concerning those elements because the jury had sufficient evidence to find the defendant guilty of the evasion of responsibility charge without ever reaching the issue that was pre-

---

[14] We have for our review only the transcript of the proceedings below, and, therefore, we recognize that the instruction as given may not have been perceived by the jury as an "and/or" statement. Reading the instruction another way, it could also be perceived as a correction of "or that" to "and that." If this is so, then the instruction is still inaccurate because it does not state that the option of reporting information off scene is only available if the defendant was unable to render information at the scene. Neither "and" nor "or" appropriately convey the language of § 14-224.

sented by an "and/or" reporting instruction. We conclude that the defendant did not suffer any prejudice as a result of the court's description of the elements of the statute.

## II

The defendant also argues that the court erroneously allowed the state to put into evidence a portion of the defendant's statement to Officer Richard Baxter of the Waterbury police department by asking Baxter questions about the statement while precluding defense counsel from asking him about other information contained in the statement. The statement to which the defendant refers is reproduced in part as an appendix to the defendant's brief. It is the appellant's duty to provide us with an adequate record for review. Practice Book § 61-10; *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 257 Conn. 359, 364, 777 A.2d 681 (2001). "The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . . Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . ." (Internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 364. The documents attached to the defendant's brief were never marked for identification at trial. The record is therefore inadequate for review of this issue.

## III

The defendant's remaining claims are all evidentiary in nature. However, the various items of evidence that the defendant claims were included or excluded improperly all relate to the second count of the information that charged him with manslaughter in the second

degree with a motor vehicle in violation of § 53a-56b.[15] The jury was unable to reach a unanimous decision on the second count, and the court declared a mistrial as to that count. "[T]he trial court's declaration of a mistrial will lead to a second trial. Thus, there is no final judgment under [General Statutes §] 52-263 because [n]o rights of the parties have been yet determined." (Internal quotation marks omitted.) *Robbins* v. *Van Gilder*, 225 Conn. 238, 251, 622 A.2d 555 (1993). In the absence of a final judgment, we cannot reach the merits of the defendant's remaining claims, and the appeal as to the charge of manslaughter in the second degree with a motor vehicle is therefore dismissed. See id.

The judgment is affirmed.

In this opinion LAVERY, C. J., concurred.

SCHALLER, J., concurring. Although I concur in the result reached by the majority, I write separately to express my disagreement with several aspects of the analysis.

First, the legislative history analysis in its present form is unnecessary. *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003) (en banc), which applies here, explicitly recognized that the text of a statute is "the most important factor to be considered." Because we agree that, in this case, the statutory language is clear, much of the majority's legislative history analysis is unnecessary. Under the circumstances of this case, I suggest that the following statement would comply with the requirements of *State* v. *Courchesne*, supra,

---

[15] General Statutes § 53a-56b (a) provides: "A person is guilty of manslaughter in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug."

537: The legislative history, when read with the language of the statute, establishes that the failure to stop immediately cannot be cured at some later time by an operator reporting the incident to police. "The purpose of the statute on evading responsibility is to ensure that when the driver of a motor vehicle is involved in an accident, he or she will promptly stop, render any necessary assistance and identify himself or herself. *The essence of the offense of evading responsibility is the failure of the driver to stop and render aid.*" (Emphasis added.) *State* v. *Johnson,* 227 Conn. 534, 544, 630 A.2d 1059 (1993).

Second, I believe that the portion of the majority opinion discussing the failure of courts in *State* v. *Jordan,* 5 Conn. Cir. Ct. 561, 564, 258 A.2d 552 (1969), *State* v. *Richter,* 3 Conn. Cir. Ct. 99, 101, 208 A.2d 359 (1964), *State* v. *LeTourneau,* 23 Conn. Sup. 420, 424, 184 A.2d 180 (1962), and *State* v. *LaRiviere,* 22 Conn. Sup. 385, 389, 173 A.2d 900 (1961), to decide the elements of the statute and the conclusions drawn therefrom is unnecessary. In addition, the reliance on *People* v. *Scofield,* 203 Cal. 703, 710, 265 P. 914 (1928), *State* v. *Severance,* 120 Vt. 268, 272, 138 A.2d 425 (1958), and *State* v. *Mann,* 135 Wis. 2d 420, 429, 400 N.W.2d 489 (App. 1986), cases from other jurisdictions, without analysis, does nothing to support the result in this case. The majority's application of *Scofield* does not make sense, as *Scofield* was not interpreting General Statutes § 14-224. Further, we risk incorrect use of other jurisdictions' case law when we cite to *Severance* and to *Mann* without interpreting their respective underlying statutes.

Finally, the analysis of the jury instructions is unnecessary and, in fact, gratuitous, as neither party has raised any issue pertaining to the jury instructions. The

majority concludes that any impropriety was harmless. That conclusion is advisory and should not be part of our opinion. Advisory opinions are created when courts address issues that are not "pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests . . . ." *United States* v. *Fruehauf*, 365 U.S. 146, 157, 81 S. Ct. 547, 5 L. Ed. 2d 476 (1961). The "generic problems with advisory opinions stem from the fact that they are usually issued without briefs and arguments of counsel . . . ." L. Tribe, American Constitutional Law (2d Ed. 1988) § 3-9, p. 74 n.7.

Our Supreme Court does not approve of this court reaching and deciding issues that were not raised or briefed by the parties. See *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 522, 815 A.2d 1188 (2003); *Lynch* v. *Granby Holdings*, 230 Conn. 95, 98–99, 644 A.2d 325 (1994). We should not, and indeed are without authority, to render advisory opinions. *Tyler E. Lyman, Inc.* v. *Lodrini*, 78 Conn. App. 582, 589–90 n.5, 828 A.2d 676 (2003); see also *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 490–91, 754 A.2d 128 (2000). In light of those policies, and in danger of misinterpreting the issue, as we have neither argument nor briefs from the parties, I believe that this portion of the opinion should be eliminated.[1]

For the foregoing reasons, I respectfully concur in the result.

---

[1] Indeed, the majority opinion seems explicitly to recognize the danger of its undertaking in footnote 14 of its opinion. As Professor Tribe suggests, problems such as this can be avoided if the issue had been raised, briefed and argued. We would then be dealing with a focused claim.