JAMES DEPIETRO *v.* DEPARTMENT OF
PUBLIC SAFETY
(AC 31484)

Gruendel, Beach and Dupont, Js.

Argued October 12, 2010—officially released February 8, 2011

*A. Paul Spinella,* for the appellant (plaintiff).

*Ronald D. Williams, Jr.,* for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, James DePietro, appeals from the judgment of the trial court dismissing his action to recover monetary damages from the defendant, the department of public safety, for lack of subject matter jurisdiction. He claims that the court improperly concluded that the doctrine of sovereign immunity barred the action. We affirm the judgment of the trial court.

When reviewing a motion to dismiss, "we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Prigge* v. *Ragaglia,* 265 Conn. 338, 340, 828 A.2d 542 (2003). At all relevant times, the plaintiff was an officer with the

Bridgeport police department assigned to the statewide firearms trafficking task force. As such, he acted as a special state police officer pursuant to General Statutes §§ 29-177 and 29-178.[1] In the early morning of February 23, 2001, the plaintiff, acting within the scope of that employment and driving a vehicle owned by the defendant, sustained serious physical injuries in an automobile accident on Interstate 91 in Middletown that was caused by the negligence of Paul Albrycht in operating his motor vehicle.

The plaintiff subsequently obtained payment of the $25,000 insurance policy limit from Albrycht. He thereafter commenced an action for monetary damages against the defendant on January 7, 2003. In his complaint, the plaintiff averred, inter alia, that on February 23, 2001, he "was an insured under the self-insurance policy of the . . . state which policy provides for underinsured motorist benefits in the amount of [$1 million] per accident involving a [s]tate of Connecticut

---

[1] General Statutes § 29-177 provides: "(a) The Commissioner of Public Safety may from time to time select such number of police personnel of any municipality of the state to act temporarily as special state policemen to carry out the duties of the task force as he deems necessary. Such policemen shall be appointed from a list of names of persons recommended to the State-Wide Narcotics Task Force Policy Board by the chiefs of police of the municipalities and approved by said board.

"(b) Each municipality shall be responsible for the full payment of the compensation of personnel temporarily assigned to the state-wide narcotics task force and such salary shall be payable to such assigned personnel while on duty with said task force.

"(c) For purposes of indemnification of such personnel and its municipalities against any losses, damages or liabilities arising out of the service and activities of the task force, personnel while assigned to, and performing the duties of, the task force shall be deemed to be acting as employees of the state."

General Statutes § 29-178 provides: "Any municipal police officer, while assigned to duty with the task force and working at the direction of the Commissioner of Public Safety or his designee, shall, when acting within the scope of his authority, have the same powers, duties, privileges and immunities as are conferred upon him as a state police officer."

police officer." He also alleged that the vehicle he operated on that date "was a motor vehicle insured for underinsured motorist benefits pursuant to said . . . [s]tate self-insured policy."

More than one year later, on January 20, 2004, the plaintiff filed a claim with the claims commissioner (commissioner) pursuant to chapter 53 of the General Statutes, §§ 4-141 through 4-165. The record before us is devoid of any ruling thereon by the commissioner. It does not indicate if, when, why or how the commissioner acted on the plaintiff's claim. Whatever that ruling, the plaintiff concedes that he did not appeal from that determination to the General Assembly pursuant to General Statutes § 4-158.

On April 24, 2007, the defendant filed a motion to dismiss the plaintiff's action on the ground that it was barred by the doctrine of sovereign immunity, which the court granted on November 24, 2008. The plaintiff thereafter filed a motion for reconsideration which the court denied, and this appeal followed.

At the outset, we note that "[t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 80–81, 818 A.2d 758 (2003).

Our courts "have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that

there can be no legal right as against the authority that makes the law on which the right depends." (Citations omitted; internal quotation marks omitted.) *Horton* v. *Meskill*, 172 Conn. 615, 623, 376 A.2d 359 (1977). The doctrine of sovereign immunity "operates as a strong presumption in favor of the state's immunity from liability or suit." *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 387–88, 978 A.2d 49 (2009). "When the legislature intends to waive immunity from suit or liability, it expresses that intent by using explicit statutory language." *Rivers* v. *New Britain*, 288 Conn. 1, 12, 950 A.2d 1247 (2008). Accordingly, to circumvent the strong presumption of sovereign immunity in an action for monetary damages, the burden is on the plaintiff to "show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . ." (Internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 388. "Exceptions to [the] doctrine [of sovereign immunity] are few and narrowly construed under our jurisprudence"; *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 258, 932 A.2d 1053 (2007); which is consistent with what our Supreme Court has termed its "longstanding adherence to the strict requirements for a waiver of such immunity." *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 389 n.5. "In the absence of a statutory waiver of sovereign immunity, the plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so." *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 351, 977 A.2d 636 (2009).

I

Thus, we first consider whether the plaintiff has demonstrated that the legislature has statutorily waived the state's sovereign immunity in the present case. Before

the trial court, the plaintiff insisted that General Statutes § 52-556 authorized his action against the defendant.[2] That statute "provides a cause of action against the state when any person is injured through the negligence of any state employee while operating a motor vehicle owned and insured by the state." *Babes* v. *Bennett*, 247 Conn. 256, 260, 721 A.2d 511 (1998). Because the plaintiff was injured by the negligence of a private citizen and not by a state official operating a motor vehicle owned and insured by the state, the court properly found that statute inapplicable. The plaintiff wisely has not advanced § 52-556 as the basis for his claim of statutory waiver in this appeal. Indeed, the plaintiff has identified no statute whatsoever indicating that the

---

[2] The plaintiff's position is somewhat understandable in light of the attestation of the defendant before the commissioner. In its April 28, 2004 motion to dismiss the plaintiff's claim before the commissioner, the defendant maintained that "§ 52-556 provides a direct [cause of] action against the state to recover damages for injuries caused by motor vehicles owned by the state. Therefore, the commissioner lacks subject matter jurisdiction to hear this claim because a direct cause of action is authorized by § 52-556 and the [plaintiff's] claim is excepted by the provisions of General Statutes § 4-142 (2)." The defendant subsequently represented to the trial court, in urging it to dismiss the present action, that § 52-556 was inapplicable to the plaintiff's claim. Our Supreme Court recently recognized that "[j]udicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding. . . . [J]udicial estoppel serves interests different from those served by equitable estoppel, which is designed to ensure fairness in the relationship between parties. . . . The courts invoke judicial estoppel as a means to preserve the sanctity of the oath or to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings. . . . Typically, judicial estoppel will apply if: (1) a party's later position is clearly inconsistent with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. . . . We further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." (Citations omitted; internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 169–70, 2 A.3d 873 (2010). In light of our conclusion that the court lacked subject matter jurisdiction, we do not address the issue of judicial estoppel. The defendant's inconsistent representations to the commissioner and the trial court are troubling nonetheless.

legislature has waived sovereign immunity with respect to his claim for underinsured motorist benefits.

It is well established that "a litigant that seeks to overcome the presumption of sovereign immunity" bears the burden of demonstrating that the legislature has authorized a particular action for money damages against the state. *C. R. Klewin Northeast, LLC* v. *Fleming*, supra, 284 Conn. 258; see also *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 388; *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711–12, 937 A.2d 675 (2007); *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003). The plaintiff in this appeal does not claim, never mind provide any substantive analysis or discussion of applicable precedent; see *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003); that § 29-178 constitutes a statutory waiver of sovereign immunity.

The dissent nevertheless champions such a claim, concluding that § 29-178 constitutes a statutory waiver of sovereign immunity, thereby permitting the plaintiff to maintain the present action. For two distinct reasons, we disagree.

First and foremost, we repeat that the burden is on the plaintiff to establish a statutory waiver of sovereign immunity. The precedent of our Supreme Court instructs that "a litigant that seeks to overcome the presumption of sovereign immunity" must identify and demonstrate a statutory waiver; *C. R. Klewin Northeast, LLC* v. *Fleming*, supra, 284 Conn. 258; it does not instruct that a reviewing appellate body sua sponte may do so. By sua sponte raising the issue of § 29-178 as a basis for statutory waiver and proceeding to a determination on that basis, the dissent disregards that precedent. In so doing, it contravenes the "strong

presumption in favor of the state's immunity from liability or suit." *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 387–88.

Our Supreme Court repeatedly has admonished this court for "[reaching] out [to] decide a case before it on a basis that the parties never have raised or briefed." *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686, aff'd after remand, 105 Conn. App. 49, 935 A.2d 1037 (2007); see also *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 97–99, 644 A.2d 325 (1994) (Appellate Court improperly reached issue never raised by parties); *State* v. *Rosario*, 81 Conn. App. 621, 640, 841 A.2d 254 (*Schaller, J.*, concurring) ("Our Supreme Court does not approve of this court reaching and deciding issues that were not raised or briefed by the parties. . . . We should not, and indeed are without authority, to render advisory opinions." [Citations omitted.]), cert. denied, 268 Conn. 923, 848 A.2d 473 (2004). Only weeks ago, in reversing a judgment of this court, our Supreme Court in *Sequenzia* v. *Guerrieri Masonry, Inc.*, 298 Conn. 816, 821–22, 9 A.3d 322 (2010), concluded that this court "should have decided the appeal based only on the issues properly brought before it" and rejected the contention that "the Appellate Court has the discretion to decide a case on any basis, regardless of whether that claim was raised by the parties." Because the burden rests exclusively with the plaintiff to demonstrate a statutory waiver on the part of the legislature, logic dictates that the "strong presumption in favor of the state's immunity from liability or suit"; *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 387–88; cannot be overcome by a plaintiff who fails to identify or to analyze the statutory provision allegedly waiving sovereign immunity. Principles of judicial restraint and binding precedent preclude this

court from sua sponte advancing a statutory analysis on the plaintiff's behalf.[3]

In addition, we disagree with the dissent's determination that the plaintiff's action is authorized by § 29-178.

[3] We repeat that sovereign immunity always implicates subject matter jurisdiction. *Martinez* v. *Dept. of Public Safety*, supra, 263 Conn. 80. Although, as a general matter, the issue of subject matter jurisdiction may be raised at any time, including sua sponte invocation by a reviewing court; *DeCorso* v. *Calderaro*, 118 Conn. App. 617, 623 n.11, 985 A.2d 349 (2009), cert. denied, 295 Conn. 919, 991 A.2d 564 (2010); the precedent of our Supreme Court also instructs that because the doctrine of sovereign immunity "operates as a strong presumption in favor of the state's immunity from liability or suit," the burden is on the plaintiff in an action against the state for monetary damages to establish that "the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . ." (Internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 387–88; see also *C. R. Klewin Northeast, LLC* v. *Fleming*, supra, 284 Conn. 258 ("a litigant that seeks to overcome the presumption of sovereign immunity" must demonstrate statutory waiver). Leaving that burden to a plaintiff is entirely consistent with what our Supreme Court has termed its "long-standing adherence to the strict requirements for a waiver of such immunity." *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 389 n.5.

Absent from the dissenting opinion is any recognition of the strong presumption in favor of the state's immunity from liability or suit and the strict requirements for waiver thereof. Rather, the dissent appears to apply the more general precept that reviewing courts should indulge every presumption in favor of the court's subject matter jurisdiction. See, e.g., *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 335, 857 A.2d 348 (2004); *Miko* v. *Commission on Human Rights & Opportunities*, 220 Conn. 192, 198, 596 A.2d 396 (1991). If the dissent is correct that, in cases in which a plaintiff seeks to establish a statutory waiver of sovereign immunity but has provided no statutory basis whatsoever, a reviewing court nevertheless sua sponte may articulate the statutory basis on the plaintiff's behalf and indulge every presumption in favor of that basis in resolving the jurisdictional question, then the precedent of our Supreme Court recognizing the strong presumption in favor of the state's immunity from liability or suit and the corresponding responsibility of the plaintiff to demonstrate a statutory waiver is but superfluous rhetoric. Apart from our disagreement with that position, we must adhere to the bedrock principle that, as an intermediate appellate body, we are not at liberty to discard, modify, reconsider, reevaluate or overrule the precedent of our Supreme Court. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010), and case law cited therein.

Assuming, arguendo, that "coverage pursuant to the defendant's underinsured motorist insurance plan is . . . a privilege afforded to persons such as the plaintiff" under § 29-178, as the dissent concludes, an analytical gap remains. The defendant maintains that the legislature has not waived sovereign immunity with respect to state police officers, special or otherwise. Its position is that no state police officer in Connecticut is statutorily authorized to commence an action for monetary damages against the state to recover underinsured motorist benefits.[4]

In the face of that assertion of sovereign immunity and the "strong presumption in favor of the state's immunity from liability or suit"; *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 387–88; it is incumbent on the party challenging that immunity to demonstrate that "the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . ." (Internal quotation marks omitted.) Id., 388. The dissent identifies no statute, nor does it provide any statutory analysis, to support the proposition that a "regular state police officer would be entitled to pursue such a suit."[5] Absent such a showing, the presumption

---

[4] The dissent states that the defendant has conceded that a regular state police officer would be entitled to pursue a suit for underinsured motorist benefits against the state. To the contrary, the transcript of oral argument before this court indicates that the defendant adamantly maintained that the doctrine of sovereign immunity barred any and all such actions, but that the state, "in its benevolence," declines to assert that defense "on an individual basis." In neither its appellate brief nor its oral argument did the defendant make the concession attributed to it by the dissent.

[5] In representing that the majority "argues that . . . the plaintiff has not established that a regular police officer would be entitled to recover monetary damages against the state under the same factual conditions that exist in this case"; the dissent misstates our position. To be clear, we hold that the plaintiff has not established that *the legislature has statutorily waived sovereign immunity so as to permit* a regular police officer to commence suit against the state.

of immunity must apply. We, therefore, conclude that neither the plaintiff nor the dissent has demonstrated a statutory waiver of sovereign immunity authorizing the plaintiff's action for monetary damages.

II

Because the plaintiff has not demonstrated a statutory waiver, he was required to obtain authorization from the commissioner prior to commencing an action in the Superior Court. *Miller* v. *Egan*, supra, 265 Conn. 317. That he did not do. Instead, he initiated such a claim more than one year *after* the commencement of the present action. That procedural impropriety, although not insignificant, pales in comparison to the larger defect plaguing this appeal, which is the failure of the plaintiff to provide this court with any record of the commissioner's determination on his claim. It is axiomatic that the appellant must provide this court with an adequate record for review. Practice Book § 61-10 provides that "[i]t is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. For purposes of this section, the term 'record' is not limited to its meaning pursuant to [Practice Book §] 63-4 (a) (2), but includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety." Accord *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 655 n.6, 954 A.2d 816 (2008) (appellant must ensure that record is perfected for presentation of appeal); *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005) (appellant must furnish adequate record because "[s]peculation and conjecture have no place in appellate review"). Without a record indicating that the commissioner granted the plaintiff authorization to maintain his action for monetary damages against the defendant, we cannot say that the court

improperly dismissed the matter for lack of subject matter jurisdiction.

The plaintiff devotes substantial discussion in his appellate brief to the collective bargaining agreement (agreement) between the state and the state police union. He argues that because he filed a grievance thereunder and allegedly has exhausted the administrative remedies set forth therein, the court has jurisdiction over his claim.[6] He is mistaken. First and foremost, the plaintiff filed that grievance on December 23, 2008, almost six years after the commencement of this action and one month after the court dismissed the action for lack of subject matter jurisdiction. "It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union." *Daley* v. *Hartford*, 215 Conn. 14, 23, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). Second, the agreement does not purport to waive the sovereign immunity of the state; rather, it contains a grievance procedure by which a party may pursue "an alleged violation or a dispute involving the application or interpretation of a specific provision of [the] [a]greement" that does not include recourse to our courts, save for limited judicial review of an arbitration award pursuant to General Statutes

---

[6] Within the exhaustion of administrative remedies discussion in his appellate brief, the plaintiff asserts that the dismissal of his claim "for lack of subject matter jurisdiction permitted the state of Connecticut to treat similarly situated people differently, in violation of the equal protection clause of the fourteenth amendment to the United States constitution." His complaint did not include an equal protection claim and that claim was not presented to, or decided by, the trial court. In addition, he has not sought review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In any event, the doctrine of sovereign immunity deprives this court of subject matter jurisdiction to consider that claim.

§ 52-418. The agreement does not permit a party to institute an action for monetary damages against the state in the Superior Court, nor does the plaintiff advance such an argument in this appeal. As a result, the plaintiff's reliance on the agreement as a basis for subject matter jurisdiction is misplaced.

To survive a motion to dismiss his action for monetary damages against the defendant, the allegations of the plaintiff's complaint, construed in their most favorable light, needed to establish either that the legislature had statutorily waived the state's sovereign immunity or that the commissioner had authorized the action. See *Miller* v. *Egan*, supra, 265 Conn. 316–17. The plaintiff's pleading establishes neither. Accordingly, the court properly determined that sovereign immunity barred the plaintiff's action for monetary damages.

As far as we can tell, this case is the first that concerns the unique status of special state police officers and the privileges and benefits extended to them under Connecticut law. The record before us indicates that the plaintiff sustained life-altering injuries, including a permanent partial impairment of his spine,[7] while acting within the scope of his employment as a special state police officer pursuant to §§ 29-177 and 29-178, and while driving a vehicle owned by the defendant, due to the negligence of an underinsured third party. The record further reveals that the underinsured motorist policy in effect at that time provided coverage to the defendant in the amount of $1 million per accident.

---

[7] The record includes the August 11, 2004 diagnosis of Eric M. Garver, an orthopedic surgeon. Garver stated that "[o]n August 29, 2003, [the plaintiff] underwent an anterior cervical discectomy, fusion, and plate fixation at the C6-7 level. On April 7, 2003, the patient underwent posterior lumbar fusion with pedicle screw fixation at L4-5 and L5-S1." In that report, Garver opined that the plaintiff "has reached maximum medical improvement and has a 25 percent disability with respect to the cervical spine and a 30 percent disability with respect to his lumbar spine as a direct result of his injury."

Paragraph C of that policy, titled "Who is An Insured," lists "state police officers employed by the [defendant]" as the insured. In its April 28, 2004 motion to dismiss the plaintiff's claim before the commissioner, the attorney general, on behalf of the defendant, affirmed that "[the plaintiff] is a Connecticut [s]tate [p]olice [t]rooper assigned to the [s]tatewide [f]irearms [t]ask [f]orce and employed by the [defendant]." On its face, the policy thus appears to provide underinsured motorist coverage to the plaintiff.

At oral argument, counsel for the defendant stated that he has handled similar claims on behalf of the defendant for "close to twenty years." He explained that although the doctrine of sovereign immunity bars such suits, the state declines to assert its sovereign immunity "on an individual basis" in the face of a bona fide claim for underinsured motorist benefits by a member of the state police union. As he put it, "the state in its benevolence does not raise the issue of sovereign immunity" when a member of the state police union entitled to underinsured motorist benefits under the agreement commences suit in the Superior Court to recover monetary damages.[8] Counsel nevertheless articulated his position that, because the plaintiff was not a member of the state police union, the state, as is its prerogative, elected not to do so in the present case.[9] In enacting § 29-178, the General Assembly expressly extended to special state police officers "the same powers, duties, privileges and immunities as are conferred upon [them as] state police officer[s]." General Statutes

---

[8] Given the record before us, we would not use the word benevolent to describe the state's conduct toward state police officers employed by the defendant who are injured in the line of duty by an uninsured or underinsured third party.

[9] The record before us includes an admission by the defendant that "on a prior occasion the state paid $25,000 to settle an [uninsured-underinsured motorist] claim brought by a municipal police officer assigned to a [s]tate [p]olice [t]ask [f]orce."

§ 29-178. The procedural posture of this case precludes consideration of the question of whether underinsured motorist coverage constitutes a privilege, as that term is used in § 29-178. We draw attention to this issue because that statute has not previously been subject to judicial scrutiny and because the facts alleged in the complaint, construed in a manner most favorable to the pleader, suggest that the plaintiff's service on the statewide firearms trafficking task force may have qualified him as an insured under the defendant's underinsured motorist policy. At the same time, § 29-177 (b) provides that "[e]ach municipality shall be responsible for the full payment of the compensation of personnel temporarily assigned to the state-wide narcotics task force and such salary shall be payable to such assigned personnel while on duty with said task force." General Statutes § 29-177 (b). As with any question involving statutory waiver of sovereign immunity, it remains the province of our General Assembly to define the contours of claims involving special state police officers such as the one presented in this appeal.

The judgment is affirmed.

In this opinion BEACH, J., concurred.

DUPONT, J., dissenting. The plaintiff, James DePietro, appeals from the judgment of the trial court dismissing his action to recover monetary damages from the defendant, the department of public safety. The defendant's motion to dismiss was premised on the application of the doctrine of sovereign immunity, which the defendant claimed barred the plaintiff's claim for damages because the doctrine divested the court of subject matter jurisdiction. The trial court agreed. The basic issue to be decided is whether the plaintiff, a member of the Bridgeport police department who was assigned to the defendant's statewide firearms trafficking task

force (task force), could, pursuant to General Statutes §§ 29-177[1] and 29-178,[2] bring an action for monetary damages against the defendant. I would conclude that the plaintiff could sue the defendant for the underinsured motorist benefits to which I believe he is entitled by virtue of § 29-178 and that the defendant waived its sovereign immunity against such claims by the passage of that legislation. Accordingly, I would reverse the judgment of the trial court.

The genesis of the plaintiff's action is a motor vehicle accident in which the plaintiff, while driving a state owned vehicle and while acting as a special state police officer carrying out the duties of the defendant's task force, and acting within the scope of that employment, was injured seriously due to the negligence of the driver of another vehicle, a private citizen who was underinsured. The plaintiff alleged in his complaint that the defendant "was self-insured for underinsured motorists benefits coverage pursuant to [General Statutes] § 38a-371" and that he "was an insured under the self-insurance policy of the . . . [s]tate, which policy provides

[1] General Statutes § 29-177 provides: "(a) The Commissioner of Public Safety may from time to time select such number of police personnel of any municipality of the state to act temporarily as special state policemen to carry out the duties of the task force as he deems necessary. Such policemen shall be appointed from a list of names of persons recommended to the State-Wide Narcotics Task Force Policy Board by the chiefs of police of the municipalities and approved by said board.

"(b) Each municipality shall be responsible for the full payment of the compensation of personnel temporarily assigned to the state-wide narcotics task force and such salary shall be payable to such assigned personnel while on duty with said task force.

"(c) For purposes of indemnification of such personnel and its municipalities against any losses, damages or liabilities arising out of the service and activities of the task force, personnel while assigned to, and performing the duties of, the task force shall be deemed to be acting as employees of the state."

[2] General Statutes § 29-178 provides: "Any municipal police officer, while assigned to duty with the task force and working at the direction of the Commissioner of Public Safety or his designee, shall, when acting within the scope of his authority, have the same powers, duties, privileges and immunities as are conferred upon him as a state police officer."

for underinsured motorist benefits in the amount of [$1 million] per accident involving a [s]tate of Connecticut police officer." He also alleged that the vehicle he operated on that date "was a motor vehicle insured for underinsured motorist benefits pursuant to said . . . [s]tate self-insured policy."

In its answer, the defendant admitted that, at the time of the accident, the plaintiff was operating a state owned vehicle as a state employee acting within the scope of his employment with the defendant's task force, the defendant was self-insured for underinsured motorist benefits coverage pursuant to § 38a-371, and the plaintiff was an insured for underinsured motorist benefits through the defendant by virtue of his status as a special state police officer assigned to the defendant's task force. The defendant's admissions in its answer are judicial admissions and relieve the plaintiff of the burden of proving by a preponderance of the evidence the factual allegations admitted. See *Reese* v. *First Connecticut Small Business Investment Co.*, 182 Conn. 326, 329, 438 A.2d 99 (1980). Such admissions are conclusive upon the defendant in this case. See *Webster Bank* v. *Zak*, 259 Conn. 766, 777, 792 A.2d 66 (2002).[3]

The majority opinion concludes that, although the state's insurance policy appears to provide underinsured motorist coverage to the plaintiff, this court need not decide if § 29-178 applies to the plaintiff.[4] As is

---

[3] Because the defendant admitted in its answer that the plaintiff was an insured under the state's self-insured policy for underinsured motorist benefits, it could not negate that admission at oral argument before this court. The vital force of a judicial admission is that it is conclusive on the party making it and prohibits any further dispute of the fact. *Webster Bank* v. *Zak*, supra, 259 Conn. 777.

[4] The majority correctly notes that the plaintiff has not identified any statute that he claims waives the sovereign immunity of the state. Therefore, the majority reasons that we, as the reviewing court, should not "sua sponte" identify such a statute. The majority also argues that even if § 29-178 applies to this plaintiff, he has not established that a regular police officer would be entitled to recover monetary damages against the state under the same factual conditions that exist in this case.

noted by the majority opinion, no case interpreting whether the words "powers, duties, privileges and immunities," as used in that statute, include persons such as the plaintiff who were injured while assigned to the defendant's task force, has yet been decided. The majority concludes that because the allegations of the plaintiff's complaint do not establish either that the legislature had statutorily waived the state's sovereign immunity or that the claims commissioner had authorized the action, the court properly determined that sovereign immunity deprived the court of subject matter jurisdiction and, therefore, barred the plaintiff's action for money damages. I conclude that § 29-178 grants persons such as the plaintiff the same powers and privileges as are conferred on a state police officer, that a regular state police officer would receive underinsured benefits under the state's policy and that the defendant's motion to dismiss should not have been granted. The defendant admits that the plaintiff was insured for underinsured motorist benefits through the state by virtue of his status as a special state police officer assigned to the defendant's task force.

The state obtained its insurance policy pursuant to the collective bargaining agreement between the state and the state police union and pursuant to § 38a-371. Paragraph C of the policy is entitled "Who is An Insured" and lists state police officers employed by the defendant as insured. If an insured includes a state police officer, as is stated in paragraph C, because § 29-178 treats a special state police officer as a regular state police officer, the plaintiff is covered as an insured under the policy. No mention is made in § 29-178 that members of a municipal force assigned temporarily to the state police must be members of the state police union.[5] In fact, the collective bargaining agreement between the state and the state police union specifically states in

---

[5] The plaintiff admits that he is not a member of the state police union.

art. VI, § 1, that "[d]uring the life of this Agreement, an employee retains the freedom of choice whether or not to become or remain a member of the Union which has been designated as the exclusive bargaining agent." I conclude that whether the plaintiff is a member of the union is irrelevant with regard to whether he is entitled to coverage under the state's insurance policy. It is undisputed by the defendant that the plaintiff, by virtue of his status as a member of the task force while acting within the scope of his authority, was insured for underinsured motorist benefits through the state. Section 29-178 provides in relevant part that "[a]ny municipal police officer, while assigned to duty with the task force and working at the direction of the [defendant] . . . shall, when acting within the scope of his authority, have the same powers, duties, privileges and immunities as are conferred upon him as a state police officer." As discussed herein, I conclude that coverage by such underinsured motorist insurance is a privilege that inures to the plaintiff by virtue of his status as a member of the task force.

Our plenary review requires us to decide if the sovereign immunity doctrine prevents the plaintiff from suing the defendant without authorization from the claims commissioner, and our answer depends on whether statutory authority for the claim exists.[6] It is necessary, therefore, to know which statute authorizes the plaintiff's action. In the plaintiff's complaint, he alleged only that the defendant was self-insured for underinsured motorist benefits pursuant to § 38a-371 and the relevant facts to support his claim that he is entitled to those benefits pursuant to § 29-178.[7] As discussed herein, I

---

[6] In cases involving the subject matter jurisdiction of the court, we can and should raise and review such an issue sua sponte, even if the plaintiff has not provided a particular statute on which he relies to waive the state's sovereign immunity. See *Miller* v. *Egan*, 265 Conn. 301, 324, 828 A.2d 549 (2003); *Webster Bank* v. *Zak*, supra, 259 Conn. 774.

[7] The plaintiff argued to the trial court the applicability of General Statutes § 52-556. The trial court correctly rejected the argument that § 52-556 applies.

do not believe that the plaintiff must cite a particular statute in order to provide this court with subject matter jurisdiction as long as the court can establish such jurisdiction.

The primary question for resolution is whether the plaintiff was required to obtain permission from the claims commissioner before instituting this action for money damages against the defendant. In order to circumvent the doctrine of sovereign immunity, a plaintiff must show that the legislature, either expressly, or by force of necessary implication, statutorily waived that immunity. *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003). The state cannot be sued for money damages without its consent except as permitted by the legislature. Id., 317. Thus, the plaintiff, in order to negate the doctrine of sovereign immunity, must either show an authorization by the claims commissioner[8] or a statutory exemption allowing such a claim against the state. I conclude that the claims commissioner lacked subject matter jurisdiction to hear the defendant's claim.

The standard procedure for making claims for money damages against the state is through a petition to the claims commissioner to waive sovereign immunity. See

That statute waives the defendant's sovereign immunity when a state official operates a state vehicle negligently. Here, the negligent operator was a private citizen.

[8] As the majority points out, the plaintiff did not provide this court with a record of the proceedings before the claims commissioner. In a memorandum of law before the trial court that is part of the record before this court, the plaintiff represented that he sought permission from the claims commissioner on January 20, 2004, and that the commissioner dismissed the plaintiff's notice of claim on June 18, 2004, citing a lack of subject matter jurisdiction. The plaintiff provided documentation that the defendant filed a motion to dismiss his claim before the claims commissioner, citing several grounds, including the ground that the plaintiff could pursue a direct action against the state to recover money damages, thus depriving the commissioner of subject matter jurisdiction. The record does not reflect the commissioner's actual ruling on this motion.

General Statutes §§ 4-141 through 4-165. General Statutes § 4-142 provides in relevant part that the commissioner "shall hear and determine all claims against the state *except* . . . claims upon which suit otherwise is authorized by law including suits to recover similar relief arising from the same set of facts . . . ." (Emphasis added.) Our Supreme Court has explained that "in order for statutory language to give rise to a necessary implication that the state has waived its sovereign immunity, [t]he probability . . . must be apparent, and not a mere matter of conjecture; but . . . necessarily such that from the words employed an intention to the contrary cannot be supposed. . . . In other words, in order for a court to conclude that a statute waives sovereign immunity by force of necessary implication, it is not sufficient that the claimed waiver reasonably may be implied from the statutory language. It must, by logical necessity, be the only possible interpretation of the language." (Citation omitted; internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 388–90, 978 A.2d 49 (2009).

Section 29-178 provides that an officer such as the plaintiff, who was assigned to duty with the task force and working at the direction of the defendant and acting within the scope of his authority, shall "have the same powers, duties, privileges and immunities as are conferred upon him as a state police officer." A privilege, as defined by Ballentine's Law Dictionary (3d Ed. 1969), is "[a]n advantage held by way of . . . permission, not possessed by others." See also *Hartford* v. *Powers*, 183 Conn. 76, 83 n.3, 438 A.2d 824 (1981) ("Webster's Third New International Dictionary defines privilege as 'a right or immunity granted as a peculiar benefit, advantage, or favor; special enjoyment of a good or exemption from an evil or burden; a peculiar or personal advantage or right esp. when enjoyed in derogation of common

right; prerogative' "). I would conclude that coverage pursuant to the defendant's underinsured motorist insurance plan is such a privilege afforded to persons such as the plaintiff.

The defendant admitted in its answer that the plaintiff was an insured for underinsured motorist benefits because of his status as a special state police officer assigned to the task force and that the state was self-insured for underinsured motorist benefits coverage pursuant to § 38a-371. As noted by the majority, on the face of the underinsured motorist policy at issue, the policy appears to provide coverage to the plaintiff. The defendant has impliedly conceded that a regular state police officer would be entitled to pursue such an action. The defendant contends that the state could, but in its "benevolence" could choose not to, raise the issue of sovereign immunity when a state police officer commences an action in the Superior Court to recover underinsured motorist benefits and admitted that on one occasion the state paid such a claim brought by a municipal police officer assigned to a state police task force. The policy of self insurance was provided because of a collective bargaining agreement between the state and the state police union and admittedly covers regular police officers. If a regular state police officer can pursue an action in Superior Court to recover underinsured motorist benefits, it defies both logic and the plain meaning of § 29-178 to conclude that the plaintiff cannot do so as well. I would hold that § 29-178 gave the plaintiff a statutory right to sue the state because a state police officer had the same right, which waived the sovereign immunity of the state that would otherwise exist.

In this case, the plaintiff's action is otherwise author-ized by law by the force of necessary implication by § 29-178 because a regular state police officer would be covered by the policy. Whether the plaintiff provided

an adequate record of the claims commissioner's ruling is irrelevant because the plaintiff did not have to seek the commissioner's permission to sue the state. Although I would conclude that § 29-178 contains a statutory exception to the doctrine of sovereign immunity, a subsidiary question is whether a reviewing court may so conclude when the plaintiff has not cited a particular statute that he claims waives sovereign immunity.

The question of subject matter jurisdiction addresses the basic competency of the court and can be raised at any time by a court sua sponte. A reviewing court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. *Webster Bank* v. *Zak*, supra, 259 Conn. 774. Thus, even if the plaintiff has not identified a particular statute that he claims waives sovereign immunity, we have a duty to determine whether such statutory authority exists because without the statutory authority, or approval of the claims commissioner, we would lack subject matter jurisdiction. The reviewing court is not an officious intermeddler or an advocate for either party when it determines its jurisdiction. Rather, it is engaging in a necessary quest to establish its power, and the trial court's power, to determine the issue.

Unlike the majority, I would therefore conclude that the plaintiff, as a special state police officer injured while acting in the scope of that employment and driving a state owned vehicle, was covered by the self-insured defendant's underinsured motorist coverage and that he comes within the purview of § 29-178. That statute gives persons such as the plaintiff the same powers, duties, privileges and immunities as are conferred on state police officers, including the right to pursue this action. The defendant admitted in its answer that the plaintiff was an insured entitled to underinsured motorist benefits because of his status on the task force.

I submit that the plaintiff did not need to file his claim with the claims commissioner because the claims commissioner did not have jurisdiction to consider the plaintiff's claim. The statutory authority in § 29-178 allows the plaintiff to bring a direct action for monetary damages against the state in the Superior Court. On the facts of this case, the doctrine of sovereign immunity did not deprive the court of subject matter jurisdiction, and the defendant's motion to dismiss the plaintiff's claim should have been denied. Therefore, I would reverse the court's judgment dismissing the plaintiff's action and remand the case for further proceedings.